V. V. DUNLAP, EXR., *v.* A. E. FANT ET AL.

74 197
177 365

1. **WILLS.** *Devise to heir at law.　Common law rule.　When inapplicable.*

The rule of the common law that a devise is void whenever the heir at law would take thereunder the same estate in quality that he would otherwise take by descent, is invoked to no purpose when the will contains other provisions with which its application does not consist.

2. **SAME.** *Estate for life.　Vested remainder.　Defeasance.*

When, by the terms of his will, a testator, who has several children, devises his real estate to his wife for life, with remainder over at her death to such of his lawful heirs as may then be alive, and the children of such as may have died, *per stirpes*, and directs that the property shall not be divided or disposed of until one of his daughters attains her majority or marries, the children of the testator take, by purchase, vested remainders, subject to defeasance by their deaths during the continuance of the life estate, and the descendants of such of them as have died during the same time also take by purchase as ulterior limitees, and not as heirs of the testator.

3. **SAME.** *Sale under execution.　Right of purchaser.　Defeasance of remainderman's interest.*

When a vested remainder is defeated by the death of the remainderman during the continuance of the particular estate, his judgment

creditor has acquired nothing by a previous purchase of his interest at execution sale.

4. JUDGMENT OF JUSTICE OF THE PEACE. *Sale of land thereunder. Filing transcript. Code* 1880, § 2211; *code* 1892, § 3499.

A sale of land under the judgment of a justice of the peace is invalid, where there is a failure to comply with the statute requiring a transcript of the proceeding in which it was rendered to be filed in the office of the clerk of the chancery court of the county in which the land lies.

FROM the chancery court of Noxubee county.

HON. T. B. GRAHAM, chancellor.

Andrew Conner died in 1853, leaving a will in which the following clause occurs: "I will and devise all my real estate to my beloved wife, Rosanna, for and during her natural life, for the use and benefit of herself and such of her children as shall live with her, . . . and upon the death of my said wife, said real estate shall go and descend to my lawful heirs, share and share alike.. But not to be divided or disposed of until my daughter, Mary A. E. Conner, attains to the age of twenty-one years or marries, at which time, if my wife be not living, said real estate shall be divided equally among my said children, and if either of my said children be then dead, leaving a child or children, such child or children shall have the portion to which the parent would have been entitled, if living; and should any of my said children die, leaving no issue, then their portion shall descend to my other heirs."

The testator had several children at the time of the execution of the will, all of whom survived him. All did not, however, survive their mother, the life tenant of the estate. Among those who died- during the continuance of the life estate was Mrs. N. L. Cavett, who left two children surviving her, John C. Cavett and Emmett D. Cavett. Mrs. V. V. Dunlap was a purchaser at execution sale, in the lifetime of Mrs. N. L. Cavett, under a judgment recovered against her and John C. Cavett in the lifetime of Mrs. Conner, and received a sheriff's

deed purporting to convey to her the interest of Mrs. N. L. Cavett. After the death of Mrs. N. L. Cavett Mrs. Dunlap purchased, under the same judgment, the interest of John C. Cavett, and also bought at execution sale under a judgment against Emmett D. Cavett. The judgment against Emmett D. Cavett was one rendered by a justice of the peace, and no transcript of the proceedings had been filed in the chancery clerk's office, as required by § 2211, code 1880, and § 3499, code 1892. The proceeding was one for a partition brought by Mrs. A. E. Fant, one of the children of Andrew Conner, against the other heirs and Mrs. Dunlap, and was not instituted until after the termination of the life estate. The interest claimed by Mrs. Dunlap in the property, as purchaser at execution, sale was the only matter contested between the parties. On final hearing, it was decreed that Mrs. Dunlap took nothing by her alleged purchase of Mrs. Cavett's interest at execution sale in her lifetime; that Mrs. Cavett's children, John C. and Emmett D., became, at her death, entitled to the interest that would have gone to her had she survived her mother; that Mrs. Dunlap was entitled to the interest of John C. Cavett, but not that of Emmett D. Cavett, a failure to file in the proper chancery clerk's office a transcript of the proceedings of the judgment under which it was sold being shown. Mrs. Dunlap appealed.

*T. J. O'Neill* and *Brame & Alexander*, for the appellant.

1. The children, including Mrs. Cavett, took by the devise just what they would have taken as the heirs of Andrew Conner, and therefore were in by descent. *McDaniel* v. *Allen*, 64 Miss., 417; 1 Fearne on Remainders, 195, 274; 4 Kent's Com., 507; *Ellis* v. *Page*, 7 Cush., 161; *Manbridge* v. *Plummer*, 2 Myl. & K., 276; Beach on Wills, § 126; *Davidson* v. *Koehler*, 76 Ind., 407; Powell on Devises, 285. The time of coming into possession, as on the death of Mrs. Conner, is immaterial. 2 Powell on Devises, 29, and cases cited.

2. The attempted substitution of the second clause of the paragraph of the will in question is void, because (1) it substituted those whom the law, as it then existed, substituted, and (2) because, if that is not so, it substitutes a limitation, void for remoteness, and in violation of our statute.

. Substituting the "children" of any who should die before the period for division, did not alter the nature of the estate of the first devisees, for it attempted to substitute for certain persons who took, as a class, another class which was the same that the law would substitute. It is well settled that, if the substitutional devise fails because too remote, or because, as in this case, it does not change the course of descent, the estate of the prior takers is not affected. Even if the word issue be held to be synonymous with children, it is still true that, under the law as it existed at the time of the testator's death, the children, as a class, inherited the estate of a deceased parent, and, in default of issue, the estate passed to the brothers and sisters equally. Hence, this clause of the will engrafted on the estate of Mrs. Cavett no conditions that the law did not already affix. The course of descent was not altered.

In providing that if any of his children should die, leaving no issue, the testator clearly did not mean simply children, but descendants. 2 Jarman on Wills.

The attempted substitution of the "issue" of deceased "heir" of testator was void, because the limitation was not inconsistent with the nature of the descent. "If a devise be to heirs or heirs of the body, in the plural, in that case even words of limitation grafted on them not inconsistent with the course of descent, will not convert them into words of purchase." 2 Preston on Estates, 353, 369.

A devise over after dying without "heirs" is, in general, void, yet this rule is not without exception, for if a person to whom a limitation over is made is a relation capable of being the collateral heir, the first devisee takes an estate tail. 1 Fearne on Remainders, 466. When the remainder is limited

to the heirs of the testator himself, if such heirs must also be the heirs of the first devisee, it means heirs of the body, and the first takes an estate tail. *Ib.*, 467. The exception is when the limitation over is to one not in the line of inheritance. *Ib.*, 468. It is manifest Conner wished the property to go to his lineal descendants. If the devise to his lawful heirs be operative at all, it is because the subsequent ·limitation to "issue" shows that he used the words "heirs" as synonymous with "heirs of his body." So construed, the effect would be to create an estate tail, and by statute it would be a fee simple. In construing limitations like these we must not look to what has in fact occurred since the death of the testator, but what was the law at that time and what might occur. Whether a devise violates the rule against perpetuities is to be determined by considering the provisions of the will at the date of the testator's death and looking to the law then in existence. If the ultimate fee in any possible contingency may not vest within the time limited by the rule against perpetuities, the devise is void, and what actually happened afterwards or what laws of descent were afterwards enacted cannot be considered. This being so, it is easy to see that the devise in this case subsequent to the life estate in the widow is void, because too remote. The limit under the then statute was a life or lives in being and to the heirs of the body of the remainderman, and, in default thereof, to the right heirs of the testator. We have seen that the devise is to the lawful heirs of the testator, and, by implication, to their "issue"—*i. e.*, lineal descendants. What interest, then, did a child of the testator take? The devise to "lawful heirs" being inoperative, each child took by inheritance, unless the subsequent limitations be given effect. As we have seen, this effect must either be that the gift to "lawful heirs" is cut down to an estate tail, and, for that reason, each child took a fee simple, or else the subsequent limitation to this issue shows that, by "lawful heirs" he

meant heirs of his body, and, therefore, as these may continue for hundreds of years, the devise is void for remoteness.

Let us illustrate: There may be a devise to a succession of donees then living—that is, in this case, Mrs. Rosanna Conner. (The "heirs" or children cannot be counted as in the "succession of donees," because they do not take successively after the death of Mrs. Conner. By successive donees is meant those who take in succession the same estate, each succeeding one taking nothing till the death of the former taker.) Mrs. Conner, the widow, then, was the only donee in being within the meaning of the statute. It is easy to conceive that on her death each of the children, save one, might die without issue, and the one die last, and leave children, or, perhaps only grandchildren. In that case, the fee would not, after the life in being, vest in the remainderman and the heirs of their bodies, but there would be, first, a life estate in being (the widow's), and then the interest a child would take in remainder would not be limited to the heirs of his body and in default to the testator's right heirs, but the remainder over to the brothers and sisters successively through eight of them, the last to take to himself and his issue. See *Cannon* v. *Barry*, 59 Miss., 289; *Hudson* v. *Gray*, 58 *Ib.*, 882; *Caldwell* v. *Willis*, 57 *Ib.*, 555.

*Orr & Dinsmore*, for the appellee.

The argument for the appellant ignores two fundamental propositions: (1) The intention of the testator in all cases must control, if consistent with law; (2) the essential difference between a definite failure of issue and an indefinite failure.

It cannot be questioned for one instant, after a common sense application of the meaning of the words used by the testator, that he intended his estate to be enjoyed by his widow so long as she lived, and, at her death, that his living children and living grandchildren—*i. e.*, his children and grandchildren living at the time of the death of the wife—should enjoy the benefit of his estate, share and share alike, the grand-

children to take the share which would have gone to their deceased parent had the parent been alive.  It is too plain to admit of doubt that the grandchildren living at the date of the death of the widow, when the life estate terminated, were intended by the testator to be his legatees, if their parent was then dead; consequently the Cavett grandchildren inherited direct from the ancestor on the death of the grandmother. Two bodies cannot occupy the same space at the same time, and it is impossible for Mrs. Cavett and her children to occupy the same space, in legal contemplation, at the same time.  The difference of their condition was realized and their different conditions provided for.  The ancestor said to the daughter, Mrs. Cavett, ''You are my legatee, provided you are alive when your mother dies, but if you die before your mother, then your children living at the time of the death of your mother are my legatees.''  Mrs. Cavett's children claim through her.  They are contingent remaindermen, and the contingency—viz., the death of Mrs. Cavett before Mrs. Conner—occurred.  The appellant asks the court to nullify the will in creating the contingent remainder.

This bring us to the second proposition.  The court will not destroy this estate in remainder if it was lawfully created. Bingham on Descents, 133 (ed. 1875), with the help of Kent in *Anderson* v. *Jackson*, 16 John., 399, gives a clear idea of the difference between a definite and an indefinite failure of issue.

If the testator intended a definite failure of issue, the term and conditions of the will are lawful and imperative.  If his words contemplate an indefinite failure of issue, then the bequest is void.  The definite failure fixes the failure of issue at some particular time within a limit, as the death of the devisee. An indefinite failure of issue is the converse of the last proposition, and means a failure of issue, sooner or later, without any fixed, certain, definite period within which it must happen. It means when the issue or the descendants shall become extinct without reference to any particular time or any particular

event.   Now, we affirm that a happier illustration of Bingham
and Kent's description of a definite failure of issue cannot be
given than is furnished by the words of this will.   "At the
death of my wife the real estate shall go to my lawful heirs,
share and share alike, to be divided when my daughter Mary
is twenty-one years old, at which time said estate shall be
equally divided among my said children.   And if any of my
said children be then dead, but leave child or children, such
child or children to take the share the parent would have been
entitled to if living."   We transpose some of the words for
the sake of perspicuity, but the accurate sense of the testator
is preserved in the tranposition.   "Lawful heirs" as first used
might be obscure, but, before the sentence closes, he defines
the term, and says "my said children."   Then follows the
definite failure of issue "if either of my said children be then
dead" (When?   Manifestly when the widow holding the life
estate dies), "leaving a child or children" (in other words,
leaving me a grandchild or grandchildren—certainly intelligent,
and not remote), "such child or children" (Who?   The child
or children of my dead child or children) "shall have the por-
tion" (What portion?   The portion of the dead parent?   Not
at all.   The dead parent took no portion), but the portion "to
which the parent would have been entitled if living."   These
words exclude Mrs. Cavett plainly as words can create an ex-
clusion.   Mrs. Cavett died leaving issue.   That issue was the
grandchildren of testator.   The time and the person were fixed
and definite.   "If, at the death of my wife, any of my chil-
dren are dead, my grandchildren shall inherit what my dead
child would have inherited if she had not died."   The validity
of such a devise is too plain to be debated.   The language of
Conner's will and of Thurman's deed in *Harris* v. *McLaurin*,
30 Miss., 533, is just the difference between the definite and
indefinite failure of issue.   Conner's will created an estate in
remainder, to be vested at a particular time in particular named
persons.   Thurman was too indefinite.   In *McDavit* v. *Allen*,

64 Miss., 417, I. H. Bolen took under the will of his father. A life estate was vested in the testator's widow, with remainder to the "heirs of the body" of the testator. I. H. Bolen was his son, and therefore was named in the will. Mrs. Cavett, whose supposed interest was sold by the sheriff, was, by the terms of Connor's will, excluded. The share which Mrs. Cavett would have been entitled to went directly to the legatees, her children. If E. D. Cavett had any interest in the land because of his being the grandson of the testator, it is very clear that the appellant did not acquire it. The transcript of the proceedings had before the justice of the peace who rendered the judgment against him, was never recorded in the chancery clerk's office, and there could, therefore, be no valid transfer of real estate under said judgment. Code 1880, § 2211; code 1892, § 3499.

*J. A. P. Campbell*, on the same side.

The death of the widow, Rosanna, was the event on whose occurrence the estate was "to go and descend" (as expressed), but unless Mary A. E. had attained twenty-one years of age or married, it was not to be divided. The plan of the testator is manifest. His widow was to have a life estate, and his children the remainder, but division was not to be made until his widow died and his daughter Mary was twenty-one or married. The death of the widow was the period designated for the estate to go to the remaindermen, but, as this might occur while Mary was under twenty-one and unmarried, no division was to be made until she was twenty-one or married. To refer, then, to Mary's condition, would make the rights of remaindermen depend, not on condition existing at the termination of the life estate, but on a contingency relating to the division of the property. Is it not evident that the testator had reference to the conditions which should exist when the life estate should end? Were the grandchildren substituted by the will for the testator's children on Mary's attaining twenty-one

or marrying in the lifetime of the mother, the life tenant? Was Mary's age or condition the condition on which it was to be determined whether children or grandchildren were to have the remainder? It was the death of Rosanna which fixed the rights of parties. "And upon the death of my said wife, said real estate shall go . . . but not to be divided," etc. "If my wife be not living (Mary being twenty-one or married), said real estate shall be equally divided among my said children; and if either of my said children be then dead," etc. It was the death of Rosanna on which the rights of ulterior limitees depended, but, as that might occur before Mary was twenty-one or married, for her sake division was not to be made until she was the one or the other. Title was fixed upon the death of the widow. Division depended on Mary being twenty-one or married. Her age and condition affected division, not title. The life tenant long survived the attainment of Mary's majority, and her death brought not only the end of the life estate, but determined the relative rights of children and grandchildren. Her death is the only period to be referred to. It was only in case the life tenant was dead that Mary's condition was made a feature of the will. It is inserted parenthetically, and solely for Mary's benefit, and not as affecting any right except to a division of the property. If Mary had died before the end of the life estate, the rights of remaindermen would have been in no manner affected thereby, and if Mary had attained twenty-one or married in the life of Rosanna, no division would have been allowable then. *Hancock* v. *Titus*, 39 Miss., 224, and *Sims* v. *Conger*, *Ib.*, 231, show that the word "then" is referable to the death of the life tenant. They show, also, that "dying without issue" means a definite failure of issue (those living at the death, etc.), and therefore an estate tail is not created by these words. 8 Paige, 483; *Busby* v. *Rhodes*, 58 Miss., 237. A complete answer to the argument that the will creates an estate tail is a quotation from Fearne on Remainders, marg. page 547, par. 7, in these words: "Where

the limitation over is on failure of issue generally, but the testator, in another passage, refers to the same persons by the name of children, and thereby explains that, by the word 'issue' he means children, of course it is the same as if the limitation over were expressly by failure of children.''

In *Sims* v. *Conger*, 39 Miss., 231 (312), the words of the contingency were die "without issue." The statute fixes the meaning of such words, and prevents the creation of an estate tail by their use. *Maurice* v. *Graham*, 8 Paige, 483. If, as argued, the devise to heirs was void, it left the reversion in the testator and disposable by his will (*Harris* v. *McLaran*, 30 Miss., 533), and it was disposed of as stated. But it was not void. It is manifest that the testator employed the word "heirs" for children. Besides, the will does not give precisely the estate which would have descended. An estate by descent would not have been subject to the ulterior limitations imposed by the will. It was, therefore, not the same estate. It would have been alienable by the remainderman and transmissible by descent downward or upward, or to collateral heirs, if an estate by descent. An estate by descent is indefeasible, unconditional, and not subject to ulterior limitations, as this estate was. The ulterior limitation or executory devise was not void as after an estate tail or for remoteness. It was made in 1853, when any number of lives in being were admissible as successive donees. It was in 1857 when the number of donees in succession was limited to two. Prior to that any number of lives in being might be grantees, with remainder to the heirs of the body of the remainderman, and, in default thereof, to the right heirs of the donor in fee. The limitation was authorized by the statute then in force, whatever may be true now.

*Cholmondley* v. *Maxey*, 12 East, 589, is exactly in point, for it was a devise, and doubtless many such cases may be found, if any are desired. The suggestion of no reversion in a testator is unavailing, for surely he could devise whatever he had not

made a valid disposition of, and even of two valid devises, the last would prevail. So, in any view the ulterior limitations of the remainder were valid, and to be upheld. If the remainder was void, only the life estate was disposed of, and the rest of the fee was disposable by the testator. A void disposition is as if it did not exist. The will gave a life estate in the land to the widow, with remainder to children, vested, but defeasible. If any died before the death of the life tenant, the estate was to go to others—a substitutional gift, an executory devise, a defeasible estate, to shift from one to the other object of the testator's bounty, according to the conditions existing at the termination of the life estate—a familiar sort of limitation, and beyond legal exception. Jarman on Wills, marginal page 824, top 837.

Can it be that a father may not now limit land to his children (not exceeding three) in succession, and to the heirs of the body or issue of the survivor, and in default of any of his right heirs? Surely he may, and, prior to 1857, he might limit thus to any number of living persons. And this is exactly what Conner did. By the will, Mrs. Cavett, a daughter of the testator, took a vested remainder, subject to be divested by her death during the life of the life tenant, in which case her portion was to go to her children. She did die in the lifetime of the tenant for life, leaving children in whom her portion under the will vested. Her vested remainder was vendible under execution, and was sold, but the purchaser got no greater title than she had, and took the estate subject to the defeasible condition on which she held it, so that, when she died before the time when the estate was to go according to the will, the interest held under her was immmediately vested in her children. A careful examination of the authorities will show that the rule that a conveyance or devise to one's heirs is void had reference entirely to the estate which the heir took in such case. It is now here questioned that, notwithstanding such a limitation, an ulterior valid limitation might be made. Not only 30 Miss.,

533, but 2 Atkyns, 55, 57, and *Cholmondley* v. *Maxey*, 12 East, 589, and other cases, show the rule and its operations to be as I contend, and any other view must be unsound. The proposition that Mrs. Cavett acquired an interest independent of the will by the demise of three of her brothers is untenable, for the reason that the will operated on all the interests and prescribed the rights of persons taking under it, as of the date of the termination of the life estate. All the directions of the will as to any of the children being dead without leaving children, had reference to the termination of the life estate. As each remainderman died, without children, his share vested in the others, and all subject to the final disposition prescribed at the termination of the life estate, Mary being twenty-one or married. Such is the will. But according to the argument that the will did not vest any interest, and that the children took as heirs by descent, the three who died had nothing to transmit, since, if the devise was void, it left the reversion in the testator and subject to his disposal (*Harris* v. *McLaran*, 30 Miss., 533), and he certainly did dispose of all the remainder, by plainly providing that certain persons should take, in the final disposition directed to be made, after his widow should die and Mary be twenty-one or married. Both events were to precede actual enjoyment of the estate by remaindermen, but death of the life tenant was the event with reference to which rights were fixed. The intent of the testator is to be gathered from the whole will, and is plainly as I contend. The infallible test is, Mary's marriage or attaining twenty-one in the lifetime of Rosanna would not have affected any rights. Mrs. Dunlap did not acquire title to what she purchased at execution sale by virtue of a judgment of a justice of the peace against Emmett Cavett. The statute was not complied with, and the court could not recognize her as owner of this interest. If she had acquired it, she should have shown it. It seems that the sheriff had conveyed the interest sold, and the deed had been filed and recorded, without the transcript of the justice's judgment, as required, and this

74 Miss.—14

deed was excluded as insufficient to vest title under a justice's judgment.

That the limitations are just as the statute of 1822 (in force when the will was made) authorized, see 4 Kent's Com., 280. If the court will look into the earlier cases, and trace the rule that a man cannot give his heir what the law would give him, it will see that the rule is to determine, whether the heir is in by the will or by the law; and I think I may safely affirm that not a case exists which holds that the nature of the heir's estate (whether by the will or by law) in any manner affects an ulterior limitation. Such a view would be an absurdity, as it appears to me. How could the question whether the heir took by the will or by law, have any effect on the limitation of the estate beyond him? It is not like the rule in Shelley's case, where certain words vest the estate in the first taker. It is nothing of that sort, and is simply a question whether the heir holds what is given him by the will or by the law of descent, and not whether what is given to another beyond him is valid or not as a gift. The latter is independent of any question as to the nature of the heir's holding, as being by the will or by the law.

I have traced the rule and examined numerous statements of it, but have not burdened my brief by extended discussion, because it seems too plain for more than a mere statement that this rule has no application in this case, and cannot cut any figure in it. An estate by descent is absolute and indefeasible, alienable, transmissible to heirs in descending, ascending and collateral lines, without any contingency or limitation over, and therefore different from that given by this will; and for that the rule does not fit this case. But, if that were not the case, how could the nature of the heir's estate exert any influence on the limitation after him? It is not matter of concern what sort of estate the heir had, for whatever he had passed out of him or her, on a certain contingency. Counsel, invoking the rule, commits the error, I think, of confounding this rule with that which causes certain

words to be treated as words of limitation bounding and marking the estate of the first taker, and therefore cutting off ulterior limitations. This rule has not a single feature in common with that, and was never attempted to be so applied as to have such effect. It has to do only with the nature of the heir's estate, and has nothing to do with ulterior limitations beyond his estate.

Argued orally by *C. H. Alexander*, for the appellant, and by *J. A. P. Campbell*, for the appellees.

COOPER, C. J., delivered the opinion of the court.

By reading the whole will of Conner, it appears that the following disposition was made of his real estate: (1) A life estate was given to his wife, Rosanna. (2) On the death of the tenant for life the fee was given to such of his children as should then be alive, but if any child should have died leaving children, such children should take the part the parent would have taken if alive. But the estate should not be divided so as to break up the domestic establishment (a farm) until the daughter, Mary A. E. Conner, should arrive at the age of twenty-one or marry.

The children of the testator took vested remainders in fee, for they were in being, capable of taking, if at any time the particular estate should determine, and the estates to which they were entitled might be of indefinite duration. But this fee was subject to defeasance by the death of any remainderman during the life of the tenant for life. If a remainderman died leaving no descendants, his estate, at the death of the life tenant, passed to his brothers or sisters or their descendants; if he died leaving children—*i. e.*, descendants—who survived the life tenant, the estate was limited over to such descendants. In such case the descendants took not the estate of their parent by descent, but they took a new estate as purchasers, limitees under the will of Andrew Conner.

The rule of the common law is that wherever the heir at law

of the devisor would take the same estate in quality under the will as he would take by descent without it, the devise is void, and he takes by descent. It is said that this rule was originally adopted into the law, first, for the benefit of the lord, to preserve the tenure and entitle him to the fruits of it; secondly, for that of creditors and others having demands on the ancestor's estate, and, in some instances, for the advantage of the heir himself, as it would toll a right of entry, or entitle him to the benefit of a warranty.

The rule seems to have prevailed though the estate given to the heir was charged with debts, or was preceded by a life estate to another, or though the estate given to the heir was subject to a condition or defeasance. *Moe* v. *Timins*, 1 Barn. & Ald., 532; *Manbridge* v. *Plummer*, 2 Mylne & Keene, 23; *Ellis* v. *Page*, 7 Cush. (Mass.), 161.

Mr. Crosby gives as a test, to strike from the will the devise to the heir, and then consider whether he would take by descent the same estate. If he does, the devise is void. 4 Kent, 507. But you may not strike from the will other distinct provisions, limitations, or charges, merely because they are connected with, related to, or dependent on, the estate attempted to be devised, for, though they do not operate as an alterative of the estate, they bind the estate, whether it be taken by devise or descent.

The appellant invokes this rule of the common law as destructive not only of the devise to his children by Conner, but also as nullifying the ulterior limitation to the children of such of the remaindermen as should die during the life of the tenant for life. Counsel argue that the appellees were the heirs at law of Conner when the death of the life tenant occurred; that both the devise to his heirs at law (those who were such at his death) and that to their descendants, if they should die during the life of the widow, the life tenant, were void, because they gave precisely the same estate which would have descended. The error lies in considering these ulterior limitees as heirs in

any sense of Conner.    They were not his heirs at all, for if he had made no will they would have taken nothing by descent. The fact that Mrs. Cavett, the mother of the appellees, died before the life tenant, and that appellees, but for the will, would have inherited whatever interest she then had, does not show that they would have taken by descent this or any other interest upon the death of Conner intestate.

Mrs. Cavett, as we have said, took a defeasible fee in remainder, but it was divested by her death during the life of Mrs. Conner, and the appellees took as purchasers under the will, and not by descent.    Mrs. Dunlap, by her purchase, got only the estate which Mrs. Cavett had, and that ended at her death.    *Ebey* v. *Adams*, 135 Ill., 80.

The execution sale of the interest of Emmett Cavett failed of effect, for the reason that the matter was not dealt with in the manner directed by law.    Where sales of land are made under judgment from a justice of the peace, the title is not complete until a certified transcript of the proceedings had before the justice is filed with the conveyance made by the officer in the proper chancery clerk's office.    Code 1880, § 2211; code 1892, § 3499.

*The decree is affirmed.*