MALLORY ET AL. *v.* WALTON ET AL.

[81 South. 113, Division A.]

1. PARTITION. *Title to property.*
   In a partition suit where the complainant has no interest in the land the bill should be dismissed without reference to what interest the defendants may have therein.

2. ACKNOWLEDGMENT. *Signature. Adopting mark.*
   Where a party acknowledged and delivered a deed, he adopts as his signature the mark appended as such thereto, though it may have been made by another.

3. ACKNOWLEDGMENT. *Impeachment. Evidence. Sufficiency.*
   The presumption is that a certificate of acknowledgment states the truth, which presumption can be overthrown only by evidence so clear, strong, and convincing as to exclude all reasonable controversy as to the falsity of the certificate.

4. TRIAL. *Failure to request ruling. Waiver of objection.*
   Where plaintiff objected to the introduction in evidence of the record of a deed, as inadmissible under Code 1906, section 1956 (Hemingway's Code, section 1616), because its execution had been denied under oath and the court reserved its ruling. In such case, plaintiffs, by failing to request a ruling on this objection before the close of the evidence, waived such objection

and defendants had a right to have the record of the deed considered without producing the original.

APPEAL from the chancery court of Calhoun county. HON. J. G. McGOWEN, Chancellor.

Suit by Mrs. L. J. Walton and other against Vernon Mallory and others. From the decree rendered, defendants appeal.

The facts are fully stated in the opinion of the court.

*Dunn & Patterson,* for apppellant.

We respectfully submit that this case should be reversed and decree entered in this court confirming the title in the defendants.

We cite the following authorities on the point of the erroneous entering of the decree *pro confesso*: *Minor* v. *Stewart,* 2 H. 912; *Hargrove* v. *Martin Pleasants & Co.,* 6 S. & M. 61; *Kelly* v. *Brooks,* 67 Miss. 235; *George* v. *Soloman,* 71 Miss. 168; *Simpson* v. *Smith & Sons Gin Co.,* 75 Miss. 505; *Kennedy* v. *East Union Lumber Co.,* 92 Miss. 405. On the question of resulting trust, see *Brown, State Land Commissioner* v. *Alexander,* 79 So. 842, and the authorities cited thereunder.

The complainants in this case are claiming an interest in this property as the heirs of T. P. Walton; therefore they stand precisely in the shoes as the man from whom they claim to inherit the property. The proof in the case shows conclusively in fact its denial is not attempted, that T. P. Walton, the husband of Mrs. L. H. Walton, and the ancestor of the other petitioners who claim as an heir of said husband, received from Captain Naron one thousand, two hundred dollars, the full purchase price of the property and that said T. P. Walton delivered the deeds to Capt. Naron. Could T. P. Walton, or those claiming through him seek a court of equity for a partition of this land, and name the grantees of his grantee as parties defendant,

and bring them into court of chancery without offering to do equity by repaying what he had gotten from Naron as full purchase price for the property? Our authorities seem to be unanimous in the negative. *Newman* v. *Taylor,* 69 Miss. 670; *Mortgate Co.* v. *Jefferson,* Ib. 770; *Dean* v. *Robertson,* 64 Miss. 195; *Pounds* v. *Pounds,* 70 Miss. and so on *ad infinitum.*

The acquiesence of Mrs. Walton in these deeds for such a great length of time, as well as her positive acts of attorning to the grantee for rent upon the death of her husband; the removal from the place; the repeated purchase; the building of valuable improvements; all we say, and respectfully submit to this honorable court, estop her from now being heard to say that she did not sign the deed, and this must be especially true when she acknowledges that the officer and her husband came to her, and she contents herself by merely saying "She did not sign it," and declined to sign it. Her signature appears by "her mark" in both deeds, and she does not state that she did not authorize any one to make her mark, or that she herself did not make it. She merely contents herself by saying that she didn't sign it. On the question of estoppel see, also, *Lucas* v. *American Freehold Land Co.,* 72 Miss. 366, and authorities cited therein.

It is not every case where a witness denies something that would raise a question of fact. It has been repeatedly held by our courts that the whole case must be looked to to govern the case, or to throw light upon the testimony of any witness.

*Evans & Hannan,* for appellees.

The evidence, as I understand it, is that Walton, deceased, joined by his wife, conveyed to Captain Naron, his son, and Mr. Mancell, a one-half undivided interest in the land, reserving therein either a life interest or the use of it during his life. When her husband died the

one-half undivided interest became absolutely the property of the Narons and Mancell, and it was proper for her to notify them, and to account for rent for the further use thereof. This did not estop her as, we understand it, from claiming an interest in the remaining one-half undivided interest. Mrs. Walton denies that she joined in any deed made by her husband to McCarthy. The records, it is true, show her name as one of the makers of the deed by her mark without witness. She could certainly testify that she did not execute or sign such a deed, and I submit that her testimony in denial of the making of such a deed, cannot be barred by the death of Captain Naron in whose favor, it is claimed, there resulted a trust.

There is no estoppel on account of the sale of homestead by head of family and warranty and receipt of purchase money, because the sale and deed is void. *Bollen* v. *Lilly,* 37 So. 811, 85 Miss. 344.

Do the acts of the defendants subsequent to the death of T. P. Walton estop them from claiming title to one-half undivided interest in the land? I do not understand the evidence to show that Mrs. Walton knew of the execution of any deed to McCarthy by her husband at the time it is claimed it was executed. It may be inferred from the evidence that she knew of it at some indefinite later time, but I think that for estoppel positive knowledge must be proved. However I submit that even if she knew of it, she is not estopped by such knowledge.

I do not think it is shown in evidence that she knew of any contemplated purchase of this interest by the defendants, appellants, or any through whom they claimed. *Hill* v. *Nash,* 73 Miss. 849, 19 So. 707. I take it that if no deed was executed by Mrs. Walton, the record purporting to show the execution of a deed and its acknowledgment, is not constructive notice, as I understand by the statute that in order to give constructive

notice, there must be execution with proper acknowledgment and proper recording.

Any accounting for rent to the Narons after the death of T. P. Walton, deceased, for their one-half interest in the land was proper, and I think does not estop appellees from claiming title to the other one-half interest.

If improvements have been placed on the land by recent claimants, with the knowledge and acquiescence of the appellees, I submit that this may be equitably settled by this court between the parties, and is not matter of estoppel.

I submit that even if appellees were claiming entire title to the land, and were estopped at all in regard to improvements, it would go only to the improvements and not to the title of the land. *Willy* v. *Brooks*, 45 Miss. 543.

I submit that there is not sufficient evidence to show on the part of appellees willful or wanton conduct causing purchaser of the Narons to believe in the existence of entire title to the land in the Narons, or inducing such purchaser to act on that belief, nor on the other hand that there is sufficient evidence to show that any appellants relied on any conduct of appellees in purchasing the land. *Toben* v. *Allen*, 53 Miss. 563; *Staton* v. *Bryant*, 55 Miss. 261; *Davis* v. *Bowmar*, 55 Miss. 671; *Lake* v. *Perry*, 95 Miss. 550, 49 So. 569.

Smith, C. J., delivered the opinion of the court.

This is a suit for partition instituted in the court below by the appellees, who are the widow and children of T. P. Walton, who died in December, 1905. The bill alleged that on the 15th day of March, 1887, Walton was the owner of the land here sought to be partitioned, which was then his homestead, and that on that day he, together with his wife, executed and delivered to G. W. Naron, T. T. Mancil, and J. R. Naron a deed

to a one-half interest therein; that on the 4th day of May, 1908, the grantees in this deed conveyed their interest in the land to' C. W. Latham, through whom the appellants claim mesne conveyances; that the appellants were the owners of the other one-half interest in the land by inheritance from Walton; and prayed not only for the partition of the land, but for an accounting for rents and profits. The answer of the appellants admitted all the allegations of the bill, but denied that the appellees owned any interest in the land, and in support thereof set forth that in March, 1887, one Daniel McCarthy conceived the idea that there was a vein of coal under the land, and induced G. W. Naron to purchase the same, with the view to its being mined by them and the profits divided between them; that Naron paid Walton therefor one thousand, two hundred dollars, and had him to execute two deeds thereto, the one set forth in the appellee's bill of complaint, and another to a one-half interest therein to McCarthy, the consideration in each being six hundred dollars both of which deeds were signed and delivered by Walton and his wife; that McCarthy was mistaken in thinking that there was a vein of coal under the land, left the country soon after the execution of the deeds, and has not since been heard of; that at the time the land was purchased by Naron he agreed verbally with Walton that he (Walton) might remain on the land until his death, which Walton did.

The answer further set forth that, because of the payment by Walton for the one-half interest in the land deeded to McCarthy, a trust therein resulted for Walton's benefit, and that the deed executed by the Narons and Mancil to Latham on the 4th day of May, 1908, conveyed the whole interest in the land.

After the filing of the appellants' answer the appellees amended their bill by making McCarthy a party defendant thereto and having publication made for him.

They also denied, under oath, that Mrs. Walton signed the deed to McCarthy.

When the cause came on to be heard Mrs. Walton testified on behalf of the appellees and denied signing the McCarthy deed, her evidence relative thereto being contained in the following question and answer:

''Q. Did you at any time between 1882 and the time of your husband's death—I direct your attention more particularly to the 15th day of March, 1887—did you sign with your husband, T. P. Walton, a deed conveying any interest in this land in question to the complainant Daniel McCarthy? A. No, sir.''

The appellees then rested their case, and the appellants introduced in evidence the deed book in the office of the chancery clerk containing the record of the two deeds, from which it appeared that both of the deeds were executed on the 15th day of March, 1887, were signed by T. P. Walton in his own proper handwriting, by Mrs. Walton by her mark as follows, ''L. J. Walton X her Mark,'' and were acknowledged by both of the grantors on the day of their date, before E. Frank, mayor of the town of Slate Springs. The deed to the Narons and Mancil was witnessed by William Doolitttle, but the one to McCarthy was without an attesting witness. De Lashmet, a business associate of Frank in 1887, was then introduced, and testified that Frank died about fifteen years before the day on which the witness testified, and was a gentleman of unimpeachable honesty and integrity; that the deeds here in question were delivered by T. P. Walton to Naron and McCarthy in his (the witness') place of business; that at G. W. Naron's request the money paid Walton for the land was counted by the witness, and ascertained to be one thousand, two hundred dollars; and that Naron verbally greed that Walton might remain on the land until his death. This witness also testified that the land was not at that time worth over three hundred dollars. It further appeared from the

appellant's evidence that after the death of Walton, which occurred in December, 1905, his widow remained on the land two years, paying to the present claimants rent therefor for the second year, at the expiration of which time she removed from the land, and neither she nor the other appelleees herein claimed any interest therein until the filing of their bill of complaint in the court below on December 16, 1915.

At the close of the appellant's evidence Mrs. Walton was again introduced by the appellees, and stated that she signed the deed executed by her husband to the Narons and Mancil, but on being asked, "Do you remember whether they came back and asked you to sign another deed?" she replied, "Yes; my husband and Mr. Frank came back and asked me to sign a deed to Mr. McCarthy, and I would not do it." She admitted paying rent for the land for the second year after her husband's death, and on being asked, "Why did you move off the land?" replied that, "My children left me and I had no one to stay with."

The first question necessary to be determined on this record is whether or not the appellees have an interest in the land. If they have not, their bill should have been dismissed without reference to what interest the appellants may have therein.

The claim of the appellees is that the land was Walton's homestead, that the deed executed by him to McCarthy was not signed by his wife, and was therefore void, and that consequently when Walton died he owned the half interest in the land claimed by the appellants to have been conveyed to McCarthy by this deed, which interest was inherited by the appellees on Walton's death. Section 2159, Code of 1906 (section 1834, Hemingway's Code), provides that: "A conveyance, mortgage, deed of trust, or other incumbrance upon the homestead exempted from execution, shall not be valid or binding unless signed by the wife of the owner, if he be married and living with his wife."

And section 1601, Code of 1906 (section 1368, Hemingway's Code), provides that:

"The term 'written,' when used in any statute, may include printing, engraving, and lithographing; except that in all cases where the signature of any person is required by law, it shall always be the proper handwriting of such person, or, in case he be unable to write, his proper mark."

The signature here in question does not purport to be in Mrs. Walton's proper handwriting, but to have been made by her mark, and what we will have to say must be limited to a signature of such character. The reason for this caution being that while a mark made by another may be adopted as a signature, there may be a difference under the last statute hereinbefore set forth between the power of a person to adopt a signature made for him by another and which purports to be in his own proper handwriting, and his power to adopt such a signature made by a mark, as to which an opinion is not now necessary. _Ferguson_ v. _Monroe County,_ 71 Miss. 524, 14 So. 81; _Sheehan_ v. _Kearney,_ 82 Miss. 688, 21 So. 41, 35 L. R. A. 102.

While Mrs. Walton denied signing the deed in controversy, she did not deny that the facts stated in the certificate of acknowledgment are true; that is, that she personally appeared beford R. Frank, mayor of the town of Slate Springs and _ex-officio_ justice of the peace, and acknowledged that she "signed and delivered" the deed. So that if her testimony be construed most strongly against her, as it should be, we must hold that the recital in the certificate is true, and, if true, then by acknowledging and delivering the deed she adopted as her signature the mark appended as such thereto, though it may have been made by another. 1 Devlin on Deeds (3 Ed.), section 237; 1 Am. Ruling Cases, 147.

But if we assume that by denying that she signed the deed Mrs. Walton intended also to deny that she acknowl-

edged and delivered it, the result must be the same, for the presumption is that a certificate of acknowledgment states the truth, which presumption can be overthrown "only by evidence, so clear, strong, and convincing as to exclude all reasonable controversy as to the falsity of the certificate" (1 C. J. 896; 1 Devlin on Deeds [3 Ed.], section 531); of which high degree of proof the evidence here in impeachment of the certificate falls far short, being only the uncorroborated testimony of the grantor whose signature is in question, which evidence is generally held to be insufficient (1 C. J. 899); while, on the other hand, the certificate of acknowledgment is corroborated by the after-conduct of all of the parties in interest, including that of Mrs. Walton herself.

It follows from the foregoing views that the decree of the court below must be reversed for the reason that the appellees have no interest in the land here in question, because of which, as hereinbefore stated, their bill should have been dismissed without reference to the extent of the appellants' interest therein.

The only other question necessary here to be determined is whether the case should be remanded to the court below for a new trial, or a final decree entered here under the provisions of section 4919, Code of 1906 (section 3195, Hemingway's Code).

The testimony of the witnesses was delivered orally before the chancellor, and when the record of the deed to McCarthy was offered in evidence the appellees objected thereto, for the reason that the execution of the deed by Mrs. Walton had been denied under oath. This objection was predicated upon section 1956, Code of 1906 (section 1616, Hemingway's Code). If this objection should have been sustained, and the record copy of the deed excluded from the evidence, no final decree should be rendered here, for the reason that the evidence objected to must be taken into consideration in order so to do.

The court reserved its ruling on this objection; and not only was no ruling thereon thereafter made, but the court was not requested so to do. The appellees were entitled to a ruling on the objection before the close of the evidence had they so requested, but by their failure so to do the objection was waived. In the absence of a ruling excluding the evidence the appellants were entitled to have it considered by the court, and, in event such a ruling had been made, they could have either introduced the original deed, or accounted for its absence, and thereby made the record copy thereof competent.

The decree of the court below will be reversed and the bill dismissed.

*Reversed and dismissed.*