SIMMONS *et al. v.* DANTZLER· *et al.*\*

(Division B.   Nov. 19, 1928.   Suggestion of Error Overruled Jan. 21, 1929.)

[118 So. 829.   No. 27330.]

---

*Corpus Juris-Cyc References: Acknowledgments, 1CJ, section 82, p. 786, n. 51; Vendor and Purchaser, 39Cyc, p. 1740, n. 69; p. 1761, n. 81.

*Currie & Currie* and *A. A. Hearst,* for appellants.

*Ford, White, Graham & Gautier,* for appellees.

Argued orally by *A. A. Hearst* and *N. T. Currie,* for appellants, and *E. J. Ford,* for appellee.

ETHRIDGE, P. J. L. N., A. F., and G. B. Dantzler, complainants in the court below, appellees here, filed suit to establish their title to a certain one hundred and sixty acres of land described in the bill of complaint against W. E. Simmons *et al.,* appellants here, defendants in the court below. Both appellants and appellees claimed title to this land through deeds derived from James A. Dossett, who homesteaded the land in question. The complainants (appellees here) filed a record title deraigned from the United States government through mesne conveyances to themselves. The bill alleges that complainants and their vendees have been in open, continuous, notorious, and adverse possession of the land for longer than the statutory period.

The deed from the United States to James A. Dossett bears date August 19, 1892, and was filed for record April 2, 1894. The deed from James A. Dossett to Joseph C.

Griffin was dated March 31, 1894. Joseph C. Griffin deeded the land to the Griffin Land Company, a corporation, on February 28, 1908, which deed was filed for record in Book 1, p. 356, in Forrest county. The deed from the Griffin Land Company to L. N., A. F., and G. B. Dantzler was dated June 30, 1925, and filed for record January 24, 1927. The deed from James A. Dossett to Simmons Bros. was dated March 9, 1892. Simmons Bros. consisted of W. E. Simmons and Abner Simmons. James A. Dossett died some ten years prior to the trial.

It appears that the deed to Simmons Bros. purports to be signed by mark, and was acknowledged before one Perkins, a member of the board of supervisors of Perry county, but was not placed of record. The deed from Dossett to J. C. Griffin was also acknowledged before Perkins, the member of the board of supervisors; but, when he was placed on the stand as a witness, he failed to recollect the transactions. He stated that the writing resembled his, and he thought it was his, but was not absolutely certain. The deed from James A. Dossett to J. C. Griffin was not signed by mark, but appeared to be Dossett's written signature and in the same handwriting as Perkins' signature, who acknowledged the deed, and possibly signed Dossett's name thereto. The brother of Dossett testified that James A. Dossett, the grantor in each of the deeds, was unable to write his name, and it was shown that he was an illiterate man.

One contention is that the deed referred to above from James A. Dossett to Griffin was void because not signed in the proper handwriting of Dossett, or by his proper mark, and that the proof showed that his name was signed to the deed by the same person who took the acknowledgment thereto, and that under section 1433, Hemingway's 1927 Code (section 1601, Code of 1906), the signature must be in the proper handwriting of such person, and, in case he be unable to write his name, then by

his proper mark; that it was the purpose of the statute to require actual writing of each name by the person signing an instrument of this kind where he could write, and if he could not write, that it be made by a mark made by the grantor, and not by another. In *Mallory* v. *Walton,* 119 Miss. 396, 81 So. 113, it was held that where a party acknowledged and delivered a deed, he adopts as his signature the mark appended thereto, although it may have been written by another; and also that the presumption is that a certified acknowledgment states the truth, which presumption can be overthrown only by evidence so clear, strong, and convincing as to exclude all reasonable doubt as to the validity of the instrument. The deed there involved seems to have been made on the 15th day of March, 1887, and thereafter, on the 4th day of May, 1908, the grantees in this deed conveyed their interest in the land to a third person through whom the appellants claimed title. It was claimed in the suit that the deed made by Mallory and his wife was void because she had not made her proper mark, and that the law required her to sign a deed executed by her husband conveying the homestead, and that the deed being not signed by her in person was void. At page 404 of the official report of this case, section 1601, Code of 1906, cited *supra,* was quoted, and then the court said:

"The signature here in question does not purport to be in Mrs. Walton's proper handwriting, but to have been made by her mark, and what we will have to say must be limited to a signature of such character. The reason for this caution being that while a mark made by another may be adopted as a signature, there may be a difference under the last statute hereinbefore set forth between the power of a person to adopt a signature made for him by another and which purports to be in his own proper handwriting, and his power to adopt such a signature made by a mark, as to which an opinion is not now necessary. *Ferguson* v. *Monroe County,* 71 Miss. 524, 14

So. 81; *Sheehan* v. *Kearney,* 82 Miss. 688, 21 So. 41, 35 L. R. A. 102. While Mrs. Walton denied signing the deed in controversy, she did not deny that the facts stated in the certificate of acknowledgment are true; that is, that she personally appeared before R. Frank, Mayor of the town of Slate Springs, and *ex officio* justice of the peace, and acknowledged that she 'signed and delivered' the deed. So that if her testimony be construed most strongly against her, as it should be, we must hold that the recital in the certificate is true, and, if true, then by acknowledging and delivering the deed she adopted as her signature the mark appended as such thereto, though it may have been made by another.''

*Ferguson* v. *Monroe County, supra,* was a case based on the local option statutes, and the court held that, unless the signatures to the petition therein required were signed by the persons themselves, the petitions would not satisfy the requirements of section 1610, Code of 1906, which required a petition in writing signed by one-third of the qualified electors ''signed by themselves,'' citing section 1520, which requires, as does the present section 1601, Code of 1906, the signature of every person to be in the proper handwriting, and the court there said:

''There is no escape from this positive and plain requirement, and it must be duly observed. Its effect is to make necessary the proper handwriting of the petitioner, or his 'proper mark,' whatever that is, if he cannot write. No more is a signature required by law to be affixed by proxy. It must be signed by the hand of the petitioner himself. *Ita lex scripta est,* and for wise purposes as we must suppose. Anyhow, it cannot be disregarded, whatever may be thought of its wisdom, and it renders worthless every name on the petition not put there by the hand of the petitioner.''

This case does not present a case where a signature was solemnly acknowledged before an officer authorized

to take acknowledgments to such instruments, and is not necessarily controlling where such acknowledgments may be legally taken by officers charged with the performance of that duty.

In the case of *Sheehan* v. *Kearney,* 82 Miss. 688, 21 So. 41, 35 L. R. A. 102, section 1601, Code of 1906, was also involved, but another section authorized a person to sign a will by his own handwriting, or by another at his direction and request, and consequently this case is without value here.

It appears to us that the case at bar is not to be decided differently from the case of *Mallory* v. *Walton, supra.* Where a person appears before an officer authorized to take acknowledgments to instruments, and solemnly acknowledges the signature to an instrument to be his own, he thereby adopts such signature as his own. And such acknowledgment has the same force, we think, applied to a signature without a mark as to one with a mark. It is different, where a person makes this solemn acknowledgment designed to give verity to an instrument being executed by him, from a case where such signature is merely to be proved by witnesses. In such a case the facts are what control, but where a grantor solemnly assures the officer taking an acknowledgment that he signed and delivered the instrument, the public are entitled to rely upon such solemn acknowledgment, and to act upon it, and it can only be avoided for fraud by clearly proven evidence of its having been unlawfully procured; for the presumption is that the certificate of acknowledgment states the truth, which presumption can be overthrown only by evidence so clear, strong, and convincing as to exclude all reasonable controversy as to the falsity of the certificate.

When a deed is thus solemnly acknowledged and placed of record, the public shall be permitted to rely upon the fact that the officer taking the acknowledgment per-

formed his duty, subject only to be disproved by clear and positive proof of fraud. To hold otherwise would make it practically impossible to rely upon public records. The records then would fail to give that protection necessary for the carrying on of transactions in dealing with land so essential to the public welfare.

The deed made by Dossett to Simmons Bros. was not placed of record. It was claimed that it was lost, and only recently found just before filing the suit. However, it was found in the place where Simmons kept his papers, and it is difficult to see how it could be there and not be discovered by reasonable diligence in looking for it.

It appears from the record that one of the Simmons brothers received the information that Dossett had given Griffin a deed to the same land, and that he stated to some other party that Griffin had discovered that Simmons' deed was lost and had procured a deed from Dossett. This statement it appears, was made near the time when the Griffin deed was signed and delivered, yet no steps were taken to establish the lost deed or to cancel the Griffin deed, during all this long period of time, when the evidence would have been easily obtained. But it was only just before appellants' suit was brought, and after the deed was rediscovered, that any effort was made by Simmons Bros. to protect their title, although they had knowledge of the outstanding deed.

We are further of the opinion that, as the chancellor below held, the Griffin Land Company was a *bona-fide* purchaser for value, without notice of the rights of Simmons Bros., and as the Simmons deed was not of record, and the Griffin deed was of record, and the title had been examined by lawyers of reputed honesty and legal ability, we think the Griffin Lumber Company would be protected as against the Simmons Bros.' claim. It is therefore immaterial whether any subsequent purchaser had

knowledge of the facts that might have lead to the dis-- covery of the Simmons deed.

It is also insisted by the appellants that the appellees did not have title to support the action to confirm the title. The deed between the corporation and the Dantzlers, we think, made them custodians of the title, and whether they were acting as trustees in selling the land, or not, for themselves and other stockholders of the Griffin Land Company, they had the legal and equitable title to the land, and the stockholders had only the claim for their pro rata of its proceeds when sold.

We think this title was sufficient to sustain their right to institute an action to confirm same.

The judgment of the court below will therefore be af-- firmed.

*Affirmed.*