WHITE, et al. *v.* INMAN, et al.

Division B. Oct. 8, 1951.

No. 38015 (54 So. (2d) 375)

Maxwell Bramlette, Clay B. Tucker and H. C. Leak, for appellants L. I. White and R. I. Lessley.

242

Truly & Truly, and **John T. Laycock,** for appellant Carrie V. Harris.

Chas. F. Engle, W. E. Gore, Breed O. Mounger, and Jesse H. Inman, for appellees.

**Ethridge, C.**

This controversy involves the determination of whether a particular instrument is a deed or will, and of its effect if valid as either. On October 28, 1889, B. R. Inman executed an instrument, the original of which has been lost, but it was recorded on the same day in the land deed records of Wilkinson County, as follows:

"In consideration of natural love and affection which I bear my wife, L. A. Inman, and my daughter Inez Inman, I give, grant and convey to my said wife and daughter, as joint tenants, with the right of survivorship, to take effect at my death and not sooner, the following described land, to-wit: * * * (here follows a description of property) * * *. But if both of said Grantees shall die without heirs, descendants of mine, living at the death of the last of said Grantees, then the remainder of said estate after such death of the survivor of said grantee, shall go to my lawful heirs in fee simple.

"Witness by hand this 28th day of October, A. D. 1889.
"Witness B. R. Inman
W. K. Cooper
W. G. Huff

"State of Mississippi ⎫
"Wilkinson County ⎭

Personally appeared before me the undersigned clerk of the Chancery Court in and for said County, the within named B. R. Inman, who acknowledged that he signed and delivered the foregoing instrument on the day and year therein mentioned.

"Given under my hand and seal of said court this 20th day of October 1889.

"R. W. P. Huff, Clerk

"Filed for record by L. A. Inman, October 28th, 1889 at 11 o'clock A.M.

"R. W. P. Huff, Clerk."

L. A. Inman, one of the joint grantees in that instrument and the second wife of B. R. Inman, died in 1892. B. R. Inman died in 1899. At the time of his death his surviving children were Inez Inman, his daughter by his second wife, and five children by his first wife, namely, R. M. Inman, Lilla Inman White, Susie Inman Stewart, W. L. Inman and B. W. Inman.

Immediately after the death of B. R. Inman in 1899, Inez Inman, later Inez Inman MacLeod, went into pos-

session of the property described in the above instrument, dated October 28, 1889, and remained in possession of it until her death on August 3, 1948. In April, 1899, upon petition of Inez Inman, a minor twenty years of age, by her aunt and next friend, Miss Carrie V. Harris, an appellant here, the chancery clerk of Wilkinson County appointed an intestate administrator of the estate of B. R. Inman, the estate was administered, was insolvent, and in 1900, the chancellor discharged the administrator. All of the other children of B. R. Inman died many years prior to the death in 1948 of Inez Inman MacLeod, who left no surviving children.

Shortly after the death of Inez in 1948, Jesse Hunter Inman, a grandson of B. R. Inman, filed a petition in chancery court in common form requesting that the above quoted instrument be admitted to probate as the last will and testament of B. R. Inman. On August 21, 1948, the chancery court executed a decree admitting the will to probate as that of B. R. Inman. In November 1948, five grandchildren and three great grandchildren of B. R. Inman filed the pesent bill of complaint in the Chancery Court of Wilkinson County against Lee I. White, a maternal grandson of B. R. Inman, and sole heir of his mother, and also the sole devisee of his aunt, Susie Inman Stewart, a daughter of B. R. Inman, and three great grandsons of B. R. Inman. The bill charged that B. R. Inman left a last will and testament, the above quoted instrument, which had been duly admitted to probate, that under that instrument he left the described property to Inez for her life, and that at her death the lands descended to the lawful heirs of B. R. Inman living at the time of the death of Inez in 1948. Listing thirteen parties as grandchildren and great grandchildren of B. R. Inman, and charging that these parties took interests under the above instrument per capita, individually, and not per stirpes as a class, the bill asked that the court adjudicate that the thirteen stated grandchildren and great grandchildren of B. R.

Inman were each entitled to an undivided ⅓th interest in the land as tenants in common.

Defendants and appellants Lee I. White and R. I. Lessley (Lessley intervened as a defendant) pleaded that the instrument was a valid deed; that the lawful heirs of B. R. Inman must be determined as of the date of his death; that Inez did not take under the ulterior limitation to the lawful heirs of B. R. Inman because by that phrase B. R. Inman meant heirs other than Inez Inman; that White was the owner of a one-fifth interest as the sole heir of his mother, Lilla Inman, and another one-fifth interest as the sole devisee of his Aunt Susie, also a daughter of B. R. Inman; that Lessley was the owner of a one-fifth interest as the sole devisee of W. L. Inman, son of B. R. Inman. The three great grandsons made defendants admitted the averment of the bill.

Appellant Carrie V. Harris was admitted as a party defendant, and by answer and cross-bill averred that she was the sole devisee of Inez Inman MacLeod; that the instrument was invalid as either a will or deed and that B. R. Inman died intestate, which is now res judicata; that B. R. Inman died intestate owning the lands in question, which descended to his six children in equal shares, and that Inez acquired the entire fee title to the land by adverse possession against her co-tenants; that Inez fulfilled the conditions of the instrument, if valid, by having heirs who are descendants of B. R. Inman living at her death; that if the instrument is valid as a deed or will, the lawful heirs are determined as of the date of testator's death, and Inez received an undivided one-sixth interest, which she devised to appellant Harris.

The foregoing is a brief summary of the major contentions of the parties. There was a hearing before the chancery court with witnesses testifying concerning whether Inez had possessed the land adversely to the other heirs. The chancery court adopted in full the theory of complainants' bill. It held that the instrument was the duly probated will of B. R. Inman; that

Inez received a life estate with remainder to the lawful heirs of B. R. Inman living at the date of the death of Inez in 1948, being thirteen grandchildren and great grandchildren who survived the life tenant; that appellant Lee I. White took a one-thirteenth interest, and that appellant Lessley took no interest, because he was the devisee of W. L. Inman who died in 1927 before the death of the life tenant, and having died before her, W. L. Inman had no estate to transmit by devise; that Harris received no interest in the land as devisee of Inez, and that Inez obtained no estate by adverse possession. From that decree White, Lessley, and Harris appeal. White claims a two-fifths and Lessley claims a one-fifth interest in the property, excluding Inez as one of the "lawful heirs" of the testator on his death. Harris claims at least a one-sixth interest as the devisee of Inez, and also the entire estate which allegedly was acquired by Inez by adverse possession.

We think that the instrument dated October 28, 1889, must be considered as testamentary in character and as a will rather than a deed. The controlling question is whether the maker intended to convey any interest before his death, or whether he intended that all of the interest should vest and take effect after his death. B. R. Inman expressly said that the instrument was "to take effect at my death and not sooner." Such a provision, which is stronger than that in Gaston v. Mitchell, 1942, 192 Miss. 452, 4 So. (2d) 892, 6 So. (2d) 318, has been held repeatedly to be testamentary and inoperative to vest any present interest. In Peebles v. Rodgers, Miss., 1951, 50 So. (2d) 632, a somewhat similar clause was construed in the same manner. The distinction there made of Watts v. Watts, 1945, 198 Miss. 246, 22 So. (2d) 625, is also applicable to the present case. The instrument was witnessed by two witnesses, as well as being acknowledged before a notary public. This adequately meets the statutory requirements as to form.

It is further contended that the appellees are now estopped to claim that the instrument is a will, because the predecessors in title of appellees were served with process prior to approval of the final account in the intestate administration of the estate of B. R. Inman in 1899. Closely related is the argument that in the intestate administration the court adjudicated that B. R. Inman died intestate, and that determination is res judicata on the appellees. The petition for letters of administration was signed by appellant Carrie Harris, next friend of Inez Inman, then a minor. It averred that B. R. Inman, "as far as petitioner is informed and believes", left no will and died possessed of certain personal property only, "except an interest in rents of land of which he was tenant for life, and said Inez remainder in fee * * *." The chancery clerk's order granting letters found that B. R. Inman left no will. The estate was insolvent prior to the final decree. Process was served on all of the children of deceased, except Inez who was a party to the petition, directing them to show cause if any why the final account of the administrator should not be approved. The children filed no pleadings in the case. The chancellor by final decree found that "all the property of deceased has been exhausted in the payment of debts * * * and that there is nothing in hand to pay to general creditors, or heirs of deceased," and discharged the administrator.

The general rule is well established that a grant of intestate administration is not a conclusive adjudication of intestacy. 21 Am. Jur., p. 456; Annotation 95 A. L. R. 1107, 1110. Code of 1942, Sec. 537, provides: "If a will shall be found and probated, and letters testamentary be granted thereon, the same shall be a revocation of the administration; but acts lawfully done by the administrator without actual notice of such revocation, shall be valid and binding." This statute impliedly recognizes that a grant of intestate administration is not a bar to a subsequent probate of a will.

However, we think that the will was "found and probated" within the terms of this statute. No attempt has been made to wrongfully conceal it, as in Re Stoball's Will, Miss. 1951, 50 So. (2d) 635. As appears from the petition for letters of administration, the instrument was considered to be a deed. Nor did the court in 1899 have submitted to it or consider the effect of the instrument in question. For these reasons the intestate administration is not res judicata on the issue of whether B. R. Inman died leaving a will. And for the same reasons, the parties are not estopped to assert that the present instrument is a will.

It is also argued that the will was not probated in compliance with the statutes, because its due execution was not proved as required by Code Sec. 498. The separate probate proceeding of 1948 was in common form, upon petition of Jesse Hunter Inman, and there were no parties defendant. The decree admitting the will to probate found that B. R. Inman had executed the instrument, witnessed by two competent witnesses and acknowledged before the Chancery Clerk of Wilkinson County, "as appears from the allegations in said petition, which are sworn to, and which petition is taken and accepted and considered by the court as affidavits of the proof of the execution of said instrument * * *." The court then adjudicated that it was the will of B. R. Inman and admitted it to probate. The final decree in the present suit contained a somewhat similar finding by the court, and also that the instrument had "been offered for probate as an ancient document which was executed October 28, 1889, placed of record the same day, and has remained of record ever since * * *." It further found that the witnesses and the chancery clerk who took the acknowledgment "have been dead for a long period of time and that the original of said document has been lost or mislaid and could not be found after diligent search * * *."

We think that the will was validly probated in common form. The appellants ask that the probate be declared void for a lack of sufficient evidence. ██ █
But where subscribing witnesses are not available, secondary evidence may be used to establish a will. Ward v. Ward, 1920, 124 Miss. 697, 87 So. 153; Tyson v. Utterback, 1929, 154 Miss. 381, 122 So. 496, 63 A. L. R. 1188. The petition for probate alleged that all of the witnesses and the notary public were dead, and the court so found. The instrument was executed in 1889 and placed of record on the date of its execution, and had remained in the public records for 59 years prior to probate. It was recorded as an instrument relating to land. It should also be noted that the instrument was acknowledged before the Chancery Clerk of Wilkinson County, a public officer. His certificate as a notary public contains both an acknowledgment as to its execution and as to its recordation. ██ █ The certificates of a notary public and also that of a clerk of the chancery court carry a presumption of correctness in the absence of clear and convincing evidence to the contrary. Mallory v. Walton, 1919, 119 Miss. 396, 81 So. 113.

Moreover, the evidential exception as to ancient wills is applicable. 57 Am. Jur., Wills, Sec. 921, defines it as follows: "The exception to the rule that documents must be authenticated by the testimony of subscribing witnesses or otherwise, which is recognized in the case of writings which are thirty years or more old, applies to wills, so that ██ █ it is not necessary to call the attesting witnesses to prove a will which is more than thirty years old reckoned from the death of the testator; even though such witnesses are living, at least if possession has been held under the will for thirty years. Although it is sometimes stated broadly that an ancient will proves itself, it should be observed that the exception of ancient documents from the rule which requires proof of their authenticity is subject to conditions the fulfilment of which dispels suspicion as to the trustworthiness of the

instrument.'' See also Nixon v. Porter, 1858, 34 Miss. 697; 6 Miss. Digest, Evidence.

Appellant Harris argues that if the instrument is valid as a will, Inez, her predecessor in title, was a life tenant, that Inez's entire possession from 1899 to 1948 was hostile and adverse to the title of the remaindermen, and that she acquired title by adverse possession against them as to the entire estate, which she in turn devised to Harris. With the possible exception of sales of timber, upon which there was conflicting evidence as to whether such sales were permissive, the possession of Inez was consistent with that of a life tenant, or the holder of a determinable fee. The chancellor found against appellant on this point. That finding is amply supported by the record. The burden of proof was upon Harris to establish the unequivocal ouster required of her as against her remaindermen or the owners of the executory interest, and she failed to meet this burden. Thomasson v. Kinard, 1929, 153 Miss. 398, 121 So. 109.

What is the proper interpretation of the limitation upon the estate of Inez Inman MacLeod? The first problem in this major issue is the meaning of the requirement that the grantee Inez ''shall die without heirs, descendants of mine, living at the death of the last of said grantees * * *.'' We think that this phrase refers to Inez dying without living children of her own. The dominant purpose of testator was to keep his property in his own family and this would be the only construction which would fully effectuate that purpose. Hence the condition that if the two grantees should die without heirs, the property was to go to his ''lawful heirs''. To describe this requirement further, appellant added the phrase ''descendants of mine''. In the popular sense, the word ''descendants'' is often used as meaning the issue from a living person. 26 C. J. S. Descend-Descendant, p. 984. It sometimes has been held to be synonomous with the word ''children''. Schmaunz v. Goss, 1882, 132 Mass. 141. Moreover, the word ''de-

scendants'' modifies the word ''heirs''. And in the context here, as in Thompson v. Green, 1927, 145 Miss. 365, 110 So. 788, we think the testator intended that entire phrase to mean ''children''. See Boxley v. Jackson, 1941, 191 Miss. 134, 1 So. (2d) 160; Middlesex Banking Co. v. Field, 1904, 84 Miss. 646, 660, 37 So. 139; Dunlap v. Fant, 1896, 74 Miss. 197, 20 So. 874. Testator did not intend to use the words ''heirs, descendants of mine'' in a technical sense, but in the popular sense of children. Inez died without any children surviving her.

██ ██ With reference to the second question under this issue, we think that the chancery court erred in holding that the ''lawful heirs'' of B. R. Inman under this will were to be determined as of the date of the death of Inez. Code Sec. 837 has no application here. It does not determine the time at which the ''lawful heirs'' of B. R. Inman are ascertained for the purpose of taking under this executory estate. It applies to the situation at common law where there would be construed to exist an indefinite failure of issue, and thus a void fee tail estate. The statute would make the limitation over take effect at the person's death without issue at that time. Chief Justice Whitfield discussed this statute in a definitive manner in Middlesex Banking Co. v. Field, 1904, 84 Miss. 646, 660, 37 So. 139, 144, and there said: ''American courts should favor executory devises to carry out the intent. 'Heirs' or 'issue' may be so used as to mean 'children,' in which cases the statute does not apply, is unnecessary, and a definite failure is intended''. See also 2 Simes, Law of Future Interests (1936), Sec. 342. The phrase ''living at the death of the last of said grantees,'' modifying ''heirs, descendants of mine'', was apparently intended as a compliance with the statute. The same phrase was not used after the phrase ''lawful heirs in fee simple'', which would indicate an intent to exclude the date referred to in the phrase used from applying to ''lawful heirs in fee simple''. Moreover, a distinction must be made between the time when the class

vests and the time when it closes or is determined. The latter is the issue here.

There is a division of the courts upon this issue of the time as to which words of survivorship relate. Annotation 114 A. L. R. 4 (1938); 33 Am. Jur. 576-584; 2 Simes, Law of Future Interests (1936), Sec. 349. The alternatives of time of testator's death or time of determination of the intervening estate are presumptive rules of construction rather than abitrary devices. The intent of the testator controls. Both his purpose and the view adopted in Mississippi, that words of survivorship presumptively relate to the time of testator's death, support the application of that result to the present case. There is no evidence to the contrary.

In Alexander v. Richardson, 1913, 106 Miss. 517, 64 So. 217, the deed provided as follows: "And I do by these presents give and bequeath unto my daughter, Eliza Jane Gray, for and during her natural life, and to her children, if any, and in default of child, or children, then to my lawful heirs forever. (This gift to take effect at my death.)"

Eliza Gray died without children, so the court held: "The ascertainment of who were the heirs of the donor must be referred to the time of his death, and not to the time of the death of the life tenant. No contrary intention appears in this case. When their father died the three sons took, as his heirs, an interest in his estate. This was subject to be defeated by the death of Mrs. Baker, the life tenant, leaving issue. This did not happen. The estate which they received upon the death of their father was never defeated or changed. Appellants were not heirs of the donor, Amos Alexander, when he died. Their fathers, the donor's heirs, were heirs."

See also Baker v. Richardson, 1911, 96 Miss. 394, 50 So. 447; Sims v. Conger, 1860, 39 Miss. 231; Harris v. McLaran, 1855, 30 Miss. 533; Schlater v. Lee, 1918, 117 Miss. 701, 78 So. 700. In Magee v. Morehead, 154 Miss. 828, 123 So. 881, the court again followed Alexander v. Rich-

ardson and said: "That decision has now become a rule of property, and not being mischievous in its operation or effect, we cannot overrule it."

The "lawful heirs" who are to take under the executory limitation in the will refers to the children of testator living at the time of his death. The same phrase was construed in this manner in Alexander v. Richardson, supra. To the same effect is Russell v. Woodson, 1927, 146 Miss. 748, 111 So. 833. See also Harkleroad v. Bass, 1905, 84 Miss. 483, 36 So. 537; Dunlap v. Fant, 1896, 74 Miss. 197, 20 So. 874. For these reasons and under this construction, which we think represents the testator's intent and is in compliance with the cases, testator devised to Inez Inman an estate in fee simple defeasible subject to an executory limitation in favor of the "lawful heirs" or children of testator living at the time of his death, per stirpes. Vol. I, A. L. I., Restatement of Property, Sec. 16, ps. 117-120. Since testator at the effective date of the instrument had no further interest in the property, the interest obtained by his children, "who are persons other than the conveyor or his successor in interest" in this sense, seems to be an executory limitation. Ibid., Sec. 25. However, whether the interest obtained by the lawful heirs of testator living at the time of his death is designated an executory limitation or a contingent remainder, 33 Am. Jur. 529, et seq., the effect here is the same. All of the children of B. R. Inman were living at the time of his death, and are the takers under his will, per stirpes.

Nor does this exclude Inez Inman MacLeod as one of the owners of this executory interest. It is argued that the fact that she was a life tenant and a holder of a prior estate, on the determination of which the executory interest vested, prevented her from also inheriting a share of it, and that the testator by using the phrase "lawful heirs" meant heirs other than Inez. But ██ ██ the fact that the holder of the prior estate is a member of the class to which the executory interest is given does not

exclude her from an interest in the executory limitation. It is said that ''a clear and unambiguous indication of an intention to exclude him must be shown.'' 33 Am. Jur. 601; Annotations, 13 A. L. R. 615, 20 A. L. R. 357. The circumstance that the first taker is one of the class to whom the limitation over is made should be considered in determining whether testator has impliedly excluded such first taker from participation in the gift over, but it does not of itself prevent the first taker from so participating. 13 A. L. R. 615, 620. Harris v. McLaran, 1855, 30 Miss. 533; Schlater v. Lee, 1918, 117 Miss. 701, 78 So. 700. We think that by the phrase ''lawful heirs'' testator meant all of his children living at the time of his death, per stirpes. In the absence of a contrary intent in the will (and none exists here) a per stirpes construction of a gift to ''lawful heirs'' is to be preferred. A ''normal testator, particularly if the issue of a near relative or himself is involved, would prefer a per stirpes rather than a per capita construction. He would prefer grandchildren to take what their parent would have taken, if living.'' Simes, Law of Future Interests (1936), Sec. 427. This is a fortiori true where the term ''lawful heirs'' connotes a distribution according to the descent and distribution statute, Code Sec. 468. Simes, *ibid.*, Sec. 432.

The final question requiring consideration is whether the interest which was received by the six children of B. R. Inman living at his death was alienable or transferrable by deed, will, and descent and distribution. The final decree erroneously held that it was not. Code Sec. 831 recognizes the right to create and convey such executory limitations. Alexander v. Richardson, supra, is decisive on the question of whether that interest is alienable or transferrable by deed, will or intestate succession. There the Court said: '' * * * it appears to us that the three sons of the donor, upon the death of their father, owned right, title, and interest in the land which they could transmit by deed during the lifetime

of the life tenant, and that this is so whether we term them reversioners or remaindermen. They had more than a bare possibility; they had also an interest. At the very least they had a possibility coupled with an interest which, under the law, may be transferred to another. Even though it was uncertain whether, during the life estate of Mrs. Baker, their interest would be divested by her death leaving children or child, still it was capable of sale and transfer by them.''

In accord is Ricks v. Riddell, 1946, 200 Miss. 122, 26 So. (2d) 782. See also Ricks v. Merchants National Bank & Trust Co. of Vicksburg, 1941, 191 Miss. 323, 2 So. (2d) 344. The holding in Alexander v. Richardson seems to represent the almost universal view in other states. 33 Am. Jur. 614; Simes, Law of Future Interest (1936), Ch. 43, 44, 45. Hence the executory interest obtained by the children of B. R. Inman living at the time of his death was transferrable by devise, deed, and descent and distribution.

Reversed and decree rendered here in accordance with this opinion.

PER CURIAM.

The above opinion is adopted as the opinion of the court, and for the reasons therein indicated, the judgment of the court below is reversed and decree rendered here in accordance with this opinion.