435 So.2d 639 (1983)
Bertha GOODWIN, Evan Goodwin, Emma Goodwin, Loree Goodwin, John Milam & James M. Nash
v.
O.R. McMURPHY, C.H. McMurphy, Charles B. Goodwin, Lucille D. Goodwin, Vera Goodwin, Jones Harold Goodwin, Nora Milam & Mark Goodwin.
No. 54192.
Supreme Court of Mississippi.
May 11, 1983.
Rehearing Denied August 17, 1983.
*640 Witherspoon & Compton, William B. Compton, Meridian, for appellants.
Wilbourn & Rogers, Don O. Rogers, Meridian, for appellees.
Before PATTERSON, C.J., and ROY NOBLE LEE and ROBERTSON, JJ.
ROY NOBLE LEE, Justice, for the Court:
O.R. McMurphy and nine other heirs-at-law of J.C.F. Goodwin and Emma L. Goodwin, his wife (Goodwins), both deceased, filed suit in the Chancery Court of Clarke County, Honorable William Neville, presiding, against Bertha Goodwin, Evan Goodwin, Emma Goodwin, Loree Goodwin, John Milam and James M. Nash, to establish their heir interests in Goodwins' lands (which would require cancellation of a Goodwins deed on the homestead property).
At the conclusion of the trial, the chancellor found that a deed from J.C.F. Goodwin to A.E. Goodwin, his son, upon which the defendants based their title, was not signed by his wife and was void. A decree was entered canceling the deed, and the defendants have appealed and assign the following errors in the trial below:
(1) The chancellor's findings of fact concerning the mother's signature or approval of the deed and the intent of the parent are manifestly wrong.
(2) The chancellor's findings are contrary to Mississippi Code Annotated § 89-5-13 (1972) concerning the validity of deeds recorded for over twenty years.
(3) The chancellor erred in not upholding the affirmative defenses as to adverse possession, the statute of limitations and laches.

I.
The appellants first contend the finding by the lower court that Mrs. Emma L. Goodwin, wife of J.C.F. Goodwin, did not sign the deed and did not authorize her signature on same, was manifestly wrong.
J.C.F. Goodwin and Emma L. Goodwin were the parents of thirteen children. Mrs. Goodwin died intestate in 1953, and Mr. Goodwin died intestate in 1955. Goodwin owned 117 acres of land in Clarke County, Mississippi, on which he and his wife resided as their homestead. Of the thirteen children, A.E., Bertha, Evan, Loree and Emma Goodwin were all single and lived with their parents on the homestead. Another son, Mack Goodwin, was single, worked away from home and came to the homestead on weekends.
Mr. Goodwin desired to provide a home for his single children, and, on December 16, 1952, he executed a deed covering the homestead to A.E. Goodwin, his oldest child. He obtained the deed form from the chancery clerk's office. It was filled in and completed by Gussie Goodwin Smith, another daughter, at the instruction and direction of Mr. Goodwin. The deed contained the following paragraph:
My 4 Single daughters, Bertha, Evan, Emma Lee Loree and one Single Son Mack shall have a home as long as each lives & stays single and want it for their home.
Gussie Goodwin Smith testified that she and Mr. Goodwin went to Quitman, obtained *641 the blank deed form from the chancery clerk, and drove back to the homestead where a description was taken from the original deed; she wrote the deed according to the direction of Mr. Goodwin; they returned to Quitman where they were advised that the deed would have to be acknowledged before it could be recorded; and then they drove to the home of W.E. Eddins, a justice of the peace, who notarized the deed without any questions concerning the signatures. The deed was executed December 16, 1952, but was not filed for record until December 8, 1953.
On June 2, 1959, A.E. Goodwin executed a warranty deed conveying the homestead property unto Bertha, Evan, Emma and Loree Goodwin, the single sisters,[1] which instrument was acknowledged before W.E. Eddins, justice of the peace, but was not filed for record until September 15, 1961. The instrument purported to convey "my interest in" the said land. A.E. Goodwin died in 1961 subsequent to execution of the deed.
Several of the brothers, sisters and nephews assisted the four single sisters from time to time in the upkeep of the home on the homestead; the four sisters paid taxes on the homestead from the date of A.E. Goodwin's death in 1961 until the present; the sisters have leased the land for farming; they have sold pecans from the land; they have raised cattle on the land; they have lived in the old home and have made repairs on it; they have built a barn on the land; they have sold timber from the land; and they leased the land for oil exploration and drilling in the fall of 1980. The oil company drilled an oil well on the land in the summer of 1981 without success. (The land was leased four times over the years). All of the original children, then living, shared in the proceeds of the oil leases.
On January 21, 1980, Bertha, Evan, Emma and Loree Goodwin executed a warranty deed conveying the land unto James M. Nash and John Milam, their nephews. The instrument was filed for record on November 12, 1980. On September 2, 1981, the appellees, being the other living children of the Goodwins, the spouses of deceased brothers and sisters, and the nephews, filed suit against Bertha, Evan, Emma Lee, Loree, James M. Nash and John Milam, charging that J.C.F. Goodwin executed the deed dated December 16, 1952, and required his daughter, Gussie Goodwin Smith, to sign the name of her mother, Emma L. Goodwin, to the deed; that Emma L. Goodwin had no knowledge of such actions and never consented or joined in the conveyance and that the deed of December 16, 1952, was void. Appellees denied the averments of the bill of complaint and charged that Emma L. Goodwin had adopted the writing of her name by Gussie Goodwin Smith as her own signature by touching the pen; and that the execution was acknowledged before Justice of the Peace Eddins in the Goodwin home. Appellants also claim that the sisters had acquired title to said lands by adverse possession.
Loree Goodwin, one of the single sisters, testified that she was present at the Goodwin home when the deed was signed; that her parents, J.C.F. Goodwin and Emma L. Goodwin, were present; that Justice of the Peace Eddins was present; that Evan Goodwin, Bertha Goodwin, and Gussie Goodwin Smith were present; that Gussie Goodwin Smith signed her mother's name to the deed while her mother touched the top of the pen; and that Justice of the Peace W.E. Eddins notarized the deed.
Evan Goodwin testified she was present at the Goodwin home when the deed was signed; that her parents were present; that Justice of the Peace Eddins was present; that she, Loree Goodwin, Gussie Goodwin Smith and Bertha Goodwin were present; and that Gussie Goodwin Smith wrote her mother's name out on the deed while her mother touched the top of the pen. (Bertha Goodwin was sick on the day of the trial and did not testify).
The appellants correctly argue that there is a presumption against bad motive, dishonesty, and fraud and that such charges *642 must be established clearly and convincingly, citing Griffith, Mississippi Chancery Practice, § 589 (2d ed. 1950) and Jones v. Minton, 244 Miss. 354, 141 So.2d 564, 565 (1962). They also contend there is a presumption that the certificate of an acknowledgment in a deed imports verity and truth and that such presumption can be overcome by clear and convincing evidence, citing 1 C.J.S. Acknowledgments, § 137; Mallory v. Walton, 119 Miss. 396, 81 So. 113 (1919) and White v. Inman, 212 Miss. 237, 54 So.2d 375 (1951). In Jones v. Minton, supra, the Court said:
There is a presumption against bad motive, dishonesty and fraud, and fraud is not a thing to be lightly charged and most emphatically not a thing to be lightly established. A mere preponderance is not sufficient to establish fraud; it must be established clearly and convincingly, especially where a long time has elapsed and some of the actors are dead. Griffith, Miss. Chancery Practice, Sec. 589. Another presumption is involved in this case. The certificate of acknowledgment to the deed in question imports verity and presumptively states the truth. This presumption can be overcome only by clear, strong, and convincing evidence, Mallory v. Walton, 119 Miss. 396, 81 So. 113; White v. Inman, 212 Miss. 237, 54 So.2d 375. This presumption arises whether the acknowledgment is made before an officer in the usual form or by the affidavit of a subscribing witness. Both are statutory methods of acknowledgment. In Simmons v. Dantzler, [152 Miss. 428, 118 So. 829] supra, it is indicated that there may be a difference between the presumption arising from the certificate of acknowledgment made before an officer and one proven by a witness, but we are unable to see any practical difference.
The two presumptions just mentioned are independent of each other but equal in force and coextensive as to the area of operation in the case at bar. Since the deed purports to bear the actual signature of Sebell Chain, presumably it was her actual, personal signature. We assume, without necessarily deciding, that the proof in this case is sufficiently strong, clear, and convincing to overcome the presumption that Sebell Chain actually affixed said signature to the deed. Therefore, Sebell Chain did not personally sign the deed. The deed does not purport to be signed by the mark of Sebell Chain. But we are not done with the presumptions, for it is presumed that since Sebell Chain did not actually affix her signature, and did not place her mark on the deed, she adopted the writing of some other person as her signature. The question then arises: Did the complainants overcome the presumptions with clear and convincing evidence? [244 Miss. at 358-359, 141 So.2d at 564-565].
The appellees have pointed out inconsistencies in the testimony of the sisters, who claimed to have seen their mother touch the pen while the daughter signed her name. Some of such inconsistencies are set out in the Appendix to this opinion.
Mississippi Code Annotated § 89-1-29 (1972) provides:
A conveyance ... upon a homestead exempted from execution shall not be valid ... unless signed by the wife (spouse) of the owner if he (she) be married and living with his (her) wife (spouse)... .
The principle has been stated many times that a chancellor's finding of fact will not be overturned unless it is manifestly wrong and against the overwhelming weight of the evidence. Andrews v. Waste Control, Inc., 409 So.2d 707 (Miss. 1982); O.J. Stanton and Co., Inc. v. Mississippi State Highway Commission, 370 So.2d 909 (Miss. 1979); Richardson v. Riley, 355 So.2d 667 (Miss. 1978); McCallum v. Ladd, 244 Miss. 273, 142 So.2d 32 (Miss. 1962).
We are of the opinion that, on conflicting evidence, it cannot be said that the chancellor was manifestly wrong in holding that the deed was not signed by, or with the authority of, Emma L. Goodwin and that the decree should be affirmed on that issue.

*643 II.
The appellants argue next that a presumption is created in their favor from Mississippi Code Annotated § 89-5-13 (1972), which follows:
Whenever a deed has been of record twenty (20) years or more in the land records of the county in which the said land is located, the same shall be presumed to have been upon lawful authority; and the acknowledgment shall be good without regard to the form of the certificate of acknowledgment.
The act itself indicates the purpose for which it was enacted:
AN ACT to provide a curative statute for deeds containing defective acknowledgments which have been recorded for twenty years or more.
BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF MISSISSIPPI:
Section 1. That whenever a deed has been of record twenty (20) years or more in the land records of the county in which the said land is located, the same shall be presumed to have been upon lawful authority; and the acknowledgment shall be good without regard to the form of the certificate of acknowledgment.
Section 2. This act shall not apply to any deeds on which there is litigation pending at the time when this act takes force and effect.
Section 3. That this act shall take effect and be in force from and after its passage.
Approved April 22, 1954. [1954 Miss. Laws, Ch. 224].
The above statute has no bearing or relevance to the question now before the Court. It is purely a curative statute for a deed which had been of record for twenty years with a defect in the acknowledgment.

III.
The appellants last contend that the lower court erred in denying the affirmative defenses of adverse possession, the statute of limitations and laches.
There is no merit in this contention. The four single sisters claim title by reason of the deed from their brother, A.E. Goodwin, which instrument purported to convey his interest in the property. There was nothing done by them to constitute an ouster as to the other tenants in common. In fact, as stated, most of the other tenants in common helped with the place and received payments from the sisters on oil and gas leases.
There being no reversible errors in the trial below, for the reasons stated, the decree of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and BOWLING, HAWKINS, DAN M. LEE, PRATHER and ROBERTSON, JJ., concur.

APPENDIX
First, when shown Exhibit 7 (the deed), Loree remarked: "I don't know what it is, but I remember seeing it done. I think it is a deed." (R. 186)
Second, Loree stated that she was not present when the form deed was completed by Gussie; she did not read the deed; and the deed was not read aloud for her to hear what it said. (R. 201)
Third, Loree did not know how Judge Eddins came to the house, but he was there to notarize the deed. (R. 187)
Fourth, Loree testified that Gussie signed the name of Emma L. Goodwin rather than making an "X". In her earlier deposition Loree stated that she didn't remember how Gussie had signed. (R. 197)
Fifth, Loree testified that Judge Eddins, Evan, Gussie, Papa, Mama and herself were present at the time of signing. In her earlier deposition, Loree stated she didn't remember who was present. (R. 199)
Sixth, Loree testified that she did not see her father sign the deed. In her earlier deposition she stated that she had seen her father sign the deed. (R. 199)
*644 Seventh, Loree did not know of a later Quitclaim Deed from A.E. Goodwin to herself, Evan, Bertha and Emma Lee to the homeplace, which was introduced as Exhibit 2. (R. 190).
Eighth, Loree believes that she and Evan, Bertha and Emma Lee still own the homeplace, when Exhibit 4 shows that they conveyed all their interest to John Milam in January of 1980. (R. 190)
Ninth, Loree did not remember when she and her sisters had leased the oil rights to the homeplace or how much they had received. (R. 194)
Tenth, Loree testified that Judge Eddins notarized other instruments for J.C.F. Goodwin, but she didn't recognize Exhibit 8 (a deed from J.C.F. and Emma Goodwin to James Nash, notarized by Judge Eddins) and did not read it either. (R. 200-202)
Eleventh, at one point Loree stated that she knew Exhibit 7 was the deed her Papa signed at that time because she knew his signature. (R. 205-206)
It is obvious that the Court did not believe the testimony of Loree. At one point during her cross-examination, the Court commented: "It is quite obvious that she knows nothing about this instrument (Exhibit 8) and it's obvious that she didn't know anything about the other instrument (Exhibit 7)." (R. 203)
With respect to the testimony of Evan Goodwin, we find the following:
First, when shown Exhibit 7 (the deed), Evan commented, "Isn't this our lease where Papa and Mama leased  I mean signed it to us four? ... I think that is what it is." (R. 209)
Second, Evan admitted that she didn't remember her Papa signing the deed. (R. 210)
Third, Evan testified that her Papa didn't tell Gussie how to complete the deed. Gussie just wrote it. (R. 223)
Fourth, Evan stated that A.E. Goodwin took the deed to be recorded. In her earlier deposition, she stated that she and Gussie took the deed to be recorded. (R. 227)
Fifth, Evan believes that she and Loree, Bertha and Emma Lee still own the homeplace, when Exhibit 4 shows that they conveyed all their interest to John Milam in January of 1980. (R. 217)
Sixth, Evan testified that her Papa was telling Gussie how to sign the deed. (R. 224) Loree testified that Judge Eddins instructed Gussie and her Mama how to sign the deed. (R. 147)
Seventh, Evan testified that her Mama knew how to write but was too proud to sign her name to the deed. (R. 224) Their mother could not write, according to Gussie (R. 103) and Loree (R. 187).
Eighth, Evan told a strange story about a lease of some oil interest and a lawyer named "Mr. Harry" taking a pencil and writing over Earl Goodwin's name on a deed and putting their names on it. (R. 230)
Ninth, Evan testified that she and Bertha, Loree and Emma Lee did not receive a conveyance of the homeplace from A.E. Goodwin. Whereas, Exhibit 2 is a recorded Quitclaim Deed from A.E. Goodwin to those four sisters. (R. 231, 224).
Tenth, Evan did not remember Judge Eddins coming to the house and notarizing any other instrument, nor did she recall Exhibit 8, which is a deed from J.C.F. and Emma L. Goodwin to James Nash and which is notarized by Judge Eddins. (R. 228)
NOTES
[1] Subsequently he executed other deeds to them.