# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-CA-02751-SCT

*EFFORT ALEXANDER*

*v.*

*ELLA DANIEL*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/17/2003 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | WANDA TURNER-LEE ABIOTO |
| ATTORNEY FOR APPELLEE: | LUCIUS EDWARDS |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 06/16/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Effort Alexander appeals to us from the DeSoto County Chancery Court's entry of a final judgment cancelling the forfeited tax land patent issued by the State of Mississippi conveying title to property which was purportedly the homestead property of Ella Daniel. Finding that the chancellor was eminently correct in  the cancellation of the forfeited tax land patent and vesting title to the property in Ella Daniel, we affirm.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     Sam Lee Daniel was born on January 11, 1908.   Ella Mae Oliver was born on August 18, 1933.  In 1962, Ella began living with Sam in his house on a 5-acre tract of land in DeSoto

County. Sam and Ella were married on March 6, 1963. At the time of their marriage, Sam was 55 years of age, and Ella was 29 years of age. As the saying goes, Sam was old enough to be Ella's father. The record reveals that it was not at all unusual for Sam to handle business matters without Ella's knowledge. Subsequent to the marriage, two other DeSoto County tracts were purchased. The DeSoto County Tax Assessor assigned to the 5-acre tract of land in dispute parcel number 3099 2900.0 00015.00 (Parcel 15).[1] The later-acquired tracts of land were assigned parcel numbers 3099 2900.0 00017.00 (Parcel 17) and 3099 2900.0 00019.00 (Parcel 19). Sam and Ella lived continuously on the same property throughout their marriage until Sam's death on August 4, 1998, at the age of 89. Once Sam reached 65 years of age in 1973, they were able to reap the full benefits of homestead exemption. It is clear from the record that there are no dwellings on Parcels 17 and 19. The significance of this fact will quickly become apparent.

¶3.     In early 1999, after Sam's death, Ella made a visit to the DeSoto County Tax Assessor's office to check on her homestead exemption status. Shortly after Sam's death, and prior to her visit to the Tax Assessor's office, Ella herself reached 65 years of age. During this conversation, personnel with the Tax Assessor's office realized that there were problems with Ella's homestead exemption.

---

[1]However, it is hotly contested as to whether Parcel No. 15 is Ella Daniel's homestead property.

2

¶4.      Indeed, unbeknownst to Ella, Sam had previously deeded what was purported to be their homestead property to Freddie Henderson.[2]     After Ella's visit to the Tax Assessor's Office, Ella wisely sought legal counsel.  Her attorney wrote a letter to Freddie Henderson, a resident of Memphis, Tennessee, informing him that since Ella had not signed the deed along with Sam, his deed which purportedly conveyed title to this homestead property was void under Mississippi law.  Enclosed in this letter was a Warranty Deed, which Ella's attorney requested Henderson to sign and return to the lawyer.  On March 5, 1999, Henderson signed the deed before a Shelby County, Tennessee, notary public and returned the deed to Ella's attorney.

¶5.      Unfortunately, Ella's troubles were not over.  Since the Tax Assessor's office had ceased listing Parcel 15 as homestead property after the purported conveyance to Henderson,[3] real estate taxes were assessed on Parcel 15 and remained unpaid since Henderson had not paid the taxes.  Because of the delinquent taxes, Parcel 15 was sold to the State of Mississippi.  Henderson was advised of his right to redeem the property for the back taxes but he failed to do so.  Enter Effort Alexander.[4]  He bought Parcel 15 for the sum of $3,162.50, and on August

---

[2]At the hearing, Ella testified that her relationship with her husband "wasn't too good," followed by this colloquy: "Q.  And you said y'all worked together.  Would he do things behind your back and not tell you.?  A.  Yes, sir, he does, all the time."

[3]As will be discussed later, there were several land conveyances which are pertinent to this case, but we note here that in 1986, there was a land conveyance by warranty deed from Sam Lee Daniel and Ella Mae Daniel to Freddie L. Henderson and Will R. Henderson, and in 1994, there was a land conveyance by warranty deed from Sam Lee Daniel to Freddie L. Henderson. There are contradictions in the record as to whether the Tax Assessor ceased listing Parcel 15 as homestead property after the 1986 conveyance or after the 1994 conveyance.  In any event, this is of no moment concerning our ultimate decision.

[4]A reading of the record will most definitely cause one to conclude that Effort Alexander had considerable experience in buying land at tax sales.

3

8, 2000, Alexander received a Forfeited Tax Patent from the State of Mississippi. On August 25, 2000, Alexander filed a complaint to confirm the state land patent in the Chancery Court of DeSoto County. Notice was provided to the State of Mississippi through the Office of the Attorney General, who filed an answer waiving the State's appearance and consenting to the chancery court conducting a hearing and affording appropriate relief. On September 25, 2000, the chancellor entered an order declaring that Alexander was the owner of Parcel 15 and that he was entitled to lawful and peaceful possession of the property.

¶6. Upon learning of these events, Ella went back to her lawyer and on December 4, 2000, Ella, through her attorney, filed a complaint in the Chancery Court of DeSoto County. This complaint sought relief, inter alia, by way of a setting aside of the forfeited tax land patent and a confirmation of title in Ella's name.

¶7. In due course, a plenary hearing was held in the Chancery Court of DeSoto County, Honorable Percy L. Lynchard, Jr., presiding.[5] Ella Daniel and Effort Alexander were present and represented by counsel.[6] In addition to the testimony of Ella and Alexander, the chancellor also received testimony from Stephen Gullett and Barbara Howell Greer. Gullett is an employee with the DeSoto County Tax Assessor's Office, and his responsibilities included

---

[5]Chancellor Lynchard was not the chancellor who had entered the order confirming title in the name of Effort Alexander.

[6]Since this action involved a request to set aside a State Forfeited Tax Land Patent, the State of Mississippi, by and through the Attorney General, was again served with notice of the action and filed an answer. As Chancellor Lynchard so eloquently put it: "The State of Mississippi has answered again that they have no dog in the fight......and the Court was authorized by the state insofar as their position was concerned to proceed at the Court's discretion."

reading all the deeds received from the Chancery Clerk's Office and then mapping the property and assigning parcel numbers. Greer is a deputy clerk with the Tax Assessor's Office. The chancellor also received documentary evidence. At the conclusion of the hearing, the chancellor rendered a thorough bench opinion wherein he, inter alia, set aside the Forfeited Tax Land Patent from the State, divested Effort Alexander of title to Parcel 15 and vested title to this property in Ella Daniel. The chancellor in due course entered a final judgment consistent with the bench opinion. Upon the chancellor's entry of an order denying post-trial motions, Alexander, through new counsel, timely perfected an appeal to this Court.

## DISCUSSION

¶8. Effort Alexander assigns three errors for us to consider: (1) Whether there was sufficient evidence to support the chancellor's finding that Parcel 15 was actually owned by Ella Daniel and Sam Lee Daniel; (2) Whether there was sufficient evidence to support the chancellor's finding that Ella Daniel owned Parcel 15 by virtue of adverse possession; and, (3) Whether the State of Mississippi should reimburse Effort Alexander for the taxes he paid on Parcel 15 after receipt of the land patent, for the monies tendered at the tax sale, and for survey costs and attorney's fees. We restate these issues for clarity.

### I. WHETHER THE CHANCELLOR ERRED IN DIVESTING EFFORT ALEXANDER OF TITLE TO PARCEL 15 AND VESTING TITLE TO PARCEL 15 IN ELLA DANIEL.

¶9. In exercising our mandated appellate review, we will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, was clearly erroneous, or applied an

erroneous legal standard. ***Rush v. Wallace Rentals, LLC***, 837 So.2d 191, 194 (Miss. 2003) (citing ***Bell v. Parker***, 563 So.2d 594, 596-97 (Miss. 1990)).

¶10.    To fully discuss this issue, we must go deeper into the record.   From 1986 until 2000, there were five DeSoto County land conveyances which must be reviewed.   (1) On November 3, 1986, Sam Lee Daniel and wife, Ella Mae Daniel, conveyed by warranty deed approximately 36 acres of land to Freddie L. Henderson and Will R. Henderson.[7]   (2) On July 18, 1988, Freddie L. Henderson conveyed by warranty deed 5½ acres of land to Sam Lee Daniel.[8]   (3) On September 22, 1994, Sam Lee Daniel conveyed by warranty deed this same 5½ acres back to Freddie L. Henderson.[9]   (4) On March 5, 1999, Freddie L. Henderson conveyed by warranty deed this same 5 ½ acres to Ella Daniel.[10]    (5) On November 27, 2000, Effort Alexander

---

[7]The legal description stated: "The Southeast quarter of the Southwest quarter of Section 29, Township 3 South, Range 9 West less and except 4 1/4 acres out of the Northeast corner thereof which exception is more particularly described by the Deed of Record in Book 30, Page 53, to which reference is made leaving a net 35 3/4 acres, more or less."  This deed was filed at 3:20 p.m., November 3, 1986, and appears of record in Book 191, Page 220, in the Office of the Chancery Clerk of DeSoto County.

[8]The legal description stated: "5 ½ acres described as beginning at the Southeast corner of the Southwest quarter of Section 29, Township 3 South, Range 9 West; thence West 309 feet to a point; thence North 775 feet to a point; thence East 309 feet to a point; thence South 775 feet to the Point of Beginning containing 5 ½ acres."   Although the deed is dated July 18, 1988, it was not filed until 3:00 p.m., February 24, 1989, and it appears of record in Book 212, Page 462, in the Office of the Chancery Clerk of DeSoto County.

[9]The legal description in this deed was identical to the legal description contained in the 1988 deed. In fact, after the legal description, we find this language: "This is the same land conveyed in the Deed in Deed Book 212, Page 462, in the Office of the Chancery Clerk of DeSoto County, Mississippi."   This deed was filed at 4:20 p.m., September 22, 1994, and appears of record in Book 276, Page 162, in the Office of the Chancery Clerk of DeSoto County.

[10]The legal description in this deed was identical to the legal descriptions contained in the 1988 and 1994 deeds.  Once again, after the legal description, we find this language: "This is the same land conveyed in Deed Book 212, Page 462 in the office of the Chancery Clerk for DeSoto County, and is also the same land conveyed to the Grantor herein from Sam Lee Daniel by deed of September 22, 1994 under Warranty Deed

conveyed by warranty deed 6.05 acres of land to Effort Alexander.[11]  Additionally, we mention

here that prior to the filing of the Alexander-to-Alexander deed, Effort Alexander had received

a Forfeited Tax Land Patent from the State of Mississippi, and within this forfeited tax land

patent, there is a legal description of the land which Alexander had purchased at the tax sale,

to-wit:

> Pt. SW 1/4 SE 1/4 BK 191 PG 220 Parcel # 3099-2900.0-00015.00 Section
> 29, Township 3 South, Range 9 West Parcel/PPIN: 30992900.000015.00
> DeSoto County, Mississippi.[12]

This forfeited tax land patent was dated August 8, 2000, and was filed at 1:38 p.m., August 18,

2000, and appears of record in Book 377, Page 753, in the Office of the Chancery Clerk of

DeSoto County.  The reference in the above legal description to "BK 191 PG 220," is in fact

Book 191, Page 220, in the DeSoto County Chancery Clerk's office.   The 1986 deed of

approximately 36 acres of land from Sam and Ella Daniel to Freddie Henderson and Will

---

recorded in Deed Book 276, Page 162 in the office of the DeSoto County, Mississippi Chancery Clerk."  This deed was filed at 10:15 a.m., March 9, 1999, and appears of record in Book 348, Page 496, in the Office of the Chancery Clerk of DeSoto County.

[11]This deed was executed subsequent to Alexander's receipt of the Forfeited Tax Land Patent on Parcel 15.  The legal description stated: "Commence at the commonly accepted northwest corner of the southwest quarter of the southeast quarter of Section 29, Township 3 South, Range 9 West, DeSoto County, Mississippi being a 1" round steel bar, thence South 0 38'22" East along the west line of the southwest quarter of the southeast quarter of said section, a distance of 64.43 feet to the POINT OF BEGINNING; thence South 88 39'09" West, a distance of 400.07 feet to a 1" steel bar with a 4" square top; thence North 0 38'22" West along said quarter line, a distance of 670.44 feet to the POINT OF BEGINNING; SAID DESCRIBED TRACT CONTAINING 6.05 Acres, more or less. See **Exhibit "A.""**  The referenced Exhibit A is a plat of the property as prepared by Hensley Land Surveying of Hernando, Mississippi. This deed was filed at 3:16 p.m., November 28, 2000, and appears of record in Book 383, Page 426, in the Office of the Chancery Clerk of DeSoto County.

[12]This is undisputably a description of Parcel 15.

Henderson is filed of record in Book 191, Page 220. What is factually uncertain is whether Ella Daniel's homestead property is either contained in the 35 3/4 acres conveyed by this deed, or is the 4 1/4 acres excepted from the conveyance, or is neither. What also is factually uncertain is whether the 6.05 acres in the Alexander-to-Alexander deed is Ella Daniel's homestead property.

¶11. But there are certain facts we do know. Stephen Gullett, a mapper with the DeSoto County Tax Assessor's office, testified at the hearing that Parcel 15 is where Ella Daniel resided at the time of the hearing. Gullett also confirmed via Exhibit 2, a Tax Forfeited Land Certificate dated September 24, 1999, that Freddie Henderson was listed as the record owner of Parcel 15, and that a 1992 Mississippi Homestead Exemption Renewal form revealed that Sam and Ella were receiving homestead exemption on Parcels 17 and 19, but not Parcel 15.[13] Also, when Ella Daniel came into the Tax Assessor's office after Sam's death, she signed a new homestead application because she had been receiving the benefit of Sam's "over 65" tax exemption; however, she had just reached 65 years of age approximately two weeks after Sam's death. The homestead application Ella signed revealed only Parcels 17 and 19 as being homestead property. Finally, Gullett testified that from all the documents to which he had access, including aerial photographs, he could state with certainty that there were no dwellings on Parcels 17 or 19 and that there were houses situated only on Parcel 15.

---

[13]The significance of the 1992 form is that as of that year, it was no longer necessary for landowners to "sign up" each year for homestead exemption. Unless there were a change in a landowner's status, the same property would automatically be renewed for homestead exemption classification without any further action by the landowner.

¶12.    Barbara Howell Greer, a deputy clerk in the DeSoto County Tax Assessor's Office, also testified at the hearing before Chancellor Lynchard.  Greer testified that there was a period of time when Sam and Ella received homestead exemption on Parcel 15 but that changed after the 1986 conveyance from Sam and Ella to Freddie Henderson.  However, Greer also testified that she knew Sam and Ella Daniel resided on Parcel 15, and that even as of the time of the hearing, she knew that Ella was still living on Parcel 15. Greer also could not explain the handwritten notation on Exhibit 10, a Homestead Exemption Record. What appears to be a notation of Parcel 15 on the homestead record was changed (in ink or pencil) from "15" to "19."  Greer also testified about the early-1999 office visit with Ella Daniel:

> A.   She came in to discuss with us that we didn't have her homestead on her house, you know, that something changed.  She discussed the fact that we didn't give her homestead on her house, and she was absolutely correct.  Somewhere between `86 and the time that she came in in `99 to do a new [application], we had assigned her – not assigned, but given her homestead on her other two tracts. She had three.  We took it off the 15 and we put it on the 17 and the 19, and she assured us that her house was on neither.
>
> Q.  When you say neither, which one are you talking about?
>
> A.   Seventeen or 19, that it was on 15.  We pulled all the maps out, we looked at it, and we sent a field man out to field check it.
> ********************
> A.   When she came in, the owner of 17 and 19 was Ella Daniel and Sam Daniel.
>
> Q.  What about the other parcel?
>
> A.  Parcel 15 I want to say was Freddie Henderson.
>
> Q.  And, in fact, Mr. Henderson bought the property in 1986; is that correct?
>
> A.  That's correct.

9

¶13.    Ella Daniel testified that in addition to the home on the 5½ acre tract which she and Sam had always homesteaded, there was also a mobile home and "another house." We note that on the surveyor's plat attached as Exhibit A to Alexander's deed, there is indicated a "white frame house," a "frame house," and a "trailer house." The road or path which cuts through the 6.05 acres from the southwest to the northeast is labeled as "Daniels Lane." This is consistent with the testimony of Ella and others as to what structures were situated on the 5½ acres where Sam and Ella had resided since 1962. Ella also testified that when she and Sam signed the 1986 deed conveying 35 3/4 acres of land to Freddie Henderson, she never intended that they convey their 5½ acre homestead property, and it was not her understanding that they were doing so. Also, Sam never told Ella about the 1994 conveyance of the 5½ acres to Henderson.

¶14.    From this record, the chancellor ruled in Ella's favor. We quote only such much of the chancellor's bench opinion as we deem necessary to adequately convey his findings of fact and conclusions of law:

> In her complaint to set aside the deed of Mr. Alexander, Ms. Daniel argues two points. First of all, that the property in question, being – or rather parcel 15 constitutes her homestead on which she has occupied and continues to this day to occupy since 1963. That her husband, Sam Lee Daniel, now deceased, and she moved on to the property in 1962. He died in 1998.....[T]wo different parcels were conveyed to Freddie Lee Henderson, one by Sam and Ella Daniel dated November 3, 1986, and one by Sam Lee Daniel only to Freddie Henderson dated September 22, 1994.
>
> At the time the 1994 property was conveyed, the DeSoto County tax assessor's office changed the designation of the parcel on which homestead – on which a homestead exemption had been granted from parcel 15 to parcel 17 or 19, either of which is unclear. However, it is clear that parcel 15 had previously been enumerated as homestead property, and following that conveyance in 1994, was no longer listed as same. The Court notes that insufficient evidence is before

10

the Court to verify the actual homestead of the parties, but it is stipulated – or rather it is not stipulated that parcel 15 is the homestead.

However, inasmuch as parcel 15 was declared by DeSoto County to be the homestead parcel and inasmuch as through the actions of the DeSoto County assessor only, that parcel number was changed for whatever reason, obviously erroneously, obvious to this Court erroneously, then same should not have been – that parcel should not have been assessed to Freddie L. Henderson, at which time Mr. Henderson should not have been the responsible party for the payment of those taxes. The surviving widow and plaintiff in this action, Ella Mae Daniel, should have been the surviving and assessed party. However, in 1998 following the death of her husband, she was, in fact, 65 years of age for which no taxes should have been assessed.

*********************

Erroneously assessing the property to Freddie Henderson, the county then ultimately through mistake or oversight reflected the property as being unpaid for taxes and subsequently conveyed it to the State of Mississippi who likewise in error conveyed same to the defendant, Effort Alexander.

Finding that the parcel in question, parcel 15, is, in fact, the homestead of the plaintiff and finding that the DeSoto County tax assessor's office.........erroneously assessed same to Freddie L. Henderson to the detriment of the plaintiff, the Court finds that the burden of proof has been met which would allow this Court to equitably set aside the order and cancel the deed or any deeds purporting to convey the property to Effort Alexander and likewise vesting title and declaring full title to Ella Daniel, the widow of Sam Lee Daniel.

¶15. The record and the applicable law certainly undergird the chancellor's findings of fact and conclusions of law. At the time of their marriage, Sam was 26 years older than Ella. Sam took care of the business transactions, quite often without telling Ella. Parcel 15 was the homestead property of Ella and Sam. As so found by the chancellor from the testimony, somewhere along the way, the Tax Assessor's office removed Parcel 15 as part of the Daniels' homestead property, and listed this property in the name of Freddie Henderson. Upon losing its tax exempt status, taxes on Parcel 15 began to accumulate, and these taxes went unpaid by

11

Henderson. Prior to the state tax sale, notice was given not to Ella but to Henderson, who failed to pay the back taxes and failed to redeem the property. Alexander argues basically that the 6.05 acres he had surveyed is Parcel 15 on his forfeited tax land patent, but that it is not the same property homesteaded by Ella and Sam. However, other than a plat attached to his deed of November 27, 2000, which itself is not wholly supportive of Alexander's position, there is little, if any, evidence before us to support Alexander's claim. Alexander offered no testimony from an engineer or a surveyor to aid the trial court, and this Court, in converting the legal descriptions into what was actually on the ground. We see no reason to get out a compass and protractor to attempt to do that which Alexander could have done while he was before the chancellor. On the other hand, two employees of the DeSoto Tax Assessor's office testified that Ella and Sam resided on Parcel 15.

¶16. If we accept the premise that the 1994 conveyance of the 5½ acres from Sam to Henderson was indeed the homestead property of Sam and Ella, then, as correctly argued by Ella, such unilateral conveyance of this homestead property by Sam without Ella's knowledge and consent by way of her signature on the deed, is void. ***Ward v. Ward***, 517 So.2d 571, 572 (Miss. 1987). Miss. Code Ann. § 89-1-29 (1999) provides in pertinent part: "A conveyance, mortgage, deed of trust or other incumbrance upon a homestead exempted from execution shall not be valid or binding unless signed by the spouse of the owner if the owner be married and living with the spouse..." In ***Ward*** we stated:

> While Section 89-1-29, Mississippi Code Annotated (1972), does not give the
> wife any property right or ownership, it does give her at least a veto power.

12

*Scott v. Scott*, 73 Miss. 575, 19 So. 589 (1896); and *Duncan v. Moore*, 67 Miss. 136, 7 So. 221 (1890).

In *Gatti v. New Orleans Railway & Mill–Supply Co.*, 77 Miss. 754, 27 So. 601 (1900), this Court held that a woman who had no title to her husband's property may convey to him all her right or interest in this homestead property. It was not until 27 years later (sic) in *Williams v. Green*, 128 Miss. 446, 91 So. 39 (1922), that this Court dropped the other shoe and held that thereafter a husband may not circumvent the statute and convey the homestead to a third party without the wife's signature.

*******************

Therefore the statute mandates that any conveyance of that homestead without the joinder of both spouses is invalid. We have consistently held that such a conveyance is null and void "as to both the husband and wife." *Hughes v. Hahn*, 209 Miss. 293, 46 So.2d 587, 589 (1950). *See also*, *Goodwin v. McMurphy*, 435 So.2d 639 (Miss. 1983); *Stockett v. Stockett,* 337 So.2d 1237 (Miss. 1976); *Gilmer v. Freeman*, 336 So.2d 717 (Miss. 1976); *Hendry v. Hendry*, 300 So.2d 147 (Miss. 1974).

The issue is *not* whether the husband and wife may convey either of their homestead interests to one another, but whether after such a conveyance, if the grantor spouse remains on the homestead, may the grantee spouse reconvey the homestead property to a third party without the joinder of the grantor spouse? The answer is no.

517 So.2d at 572-73 (emphasis in original).

¶17. Here, the chancellor was more than justified from the record in finding that the 1994 unilateral conveyance from Sam Daniel to Freddie Henderson involved the homestead property of Ella and Sam. Thus, Sam's unilateral conveyance of this property without Ella's signature on the deed was invalid. Because the property remained Ella's homestead, and because Sam, and then later, Ella, qualified for total homestead exemption, taxes wrongfully accumulated against Parcel 15. From the evidence presented, the chancellor was certainly in the best

position to make the appropriate findings of fact. *See **Culbreath v. Johnson***, 427 So.2d 705, 708 (Miss. 1983).

¶18. For the reasons stated, we find this assignment of error to be without merit.

**II. WHETHER THERE WAS SUFFICIENT EVIDENCE TO SUPPORT THE CHANCELLOR'S FINDING THAT ELLA DANIEL OWNED PARCEL 15 BY VIRTUE OF ADVERSE POSSESSION**.

¶19. A close reading of the record reveals that the only time the chancellor uttered the words "adverse possession" was when Alexander's counsel moved for a dismissal at the conclusion of Ella's case-in-chief. *See* Miss. R. Civ. P. 41(b). At the time, the chancellor, having already denied the motion to dismiss on the primary issue as to ownership and homestead assessment of Parcel 15, then made an alternative finding on adverse possession:

> Secondly, it is unrefuted, at least at this time, that the defendant – or rather the plaintiff [Ella Daniel], I'm sorry, has been in open, notorious, uninterrupted hostile possession of the property since 1963 as a married couple, far in excess of the ten years required. The Court having considered all of that finds then that the motion is not well taken and it should be overruled.

Other than this one reference to "adverse possession" in making an alternative finding in ruling on Alexander's motion to dismiss made at the close of Ella's case-in-chief, we never again see the term "adverse possession" in the record. Nothing in Chancellor Lynchard's bench opinion or written orders or judgments indicates that Chancellor Lynchard relied on adverse possession as a basis for ruling that the tax deed should be set aside and that Ella should be vested with title to Parcel 15.

¶20. Accordingly, this assignment of error is without merit.

**III.    WHETHER THE STATE OF MISSISSIPPI SHOULD REIMBURSE EFFORT ALEXANDER FOR THE MONIES PAID AT THE TAX SALE AND FOR SURVEY COSTS AND ATTORNEY'S FEES.**

¶21.    After finding that Ella should be vested with title to Parcel 15, the chancellor turned his attention to other issues and stated, inter alia:

> Now in his counterclaim, Mr. Alexander seeks compensation for damages and equitable relief in the nature of reimbursement.  The evidence indicates that he had paid $500 per year in taxes for the last two years, for the years 2001 and 2002 taxable years payable in 2002 and at the beginning of 2003 for which he should be reimbursed.  He has paid the State of Mississippi $3,162.50, has incurred survey costs, as well as attorney fees. The Court knows of no authority under the present situation in which attorney fees may be awarded. They are ...........generally awarded only in cases of fraud, contempt, or by previous contract, or in the case of the Mississippi litigation act when a frivolous matter has been filed.  Obviously, this is not frivolous.  It is not by contract, there is no contempt, and certainly no fraud.  Accordingly, the request for attorney fees must be denied.

> The $3,162.50 which was paid by Mr. Alexander to the State of Mississippi again was because of the erroneous assessment by DeSoto County and subsequently so (sic) by the State of Mississippi, ***none of which should be imputed to the plaintiff***, and that request must likewise be denied.  The Court knows of no authority for the awarding of damages for the cost of a survey.  However, certainly for the past two years taxes in the amount of $1,000, that amount is hereby assessed to [Ella Daniel] as a judgment in favor of [Alexander] and shall be enrolled as a lien on the aforesaid real estate.

(Emphasis added).  The issue obviously before the chancellor, as laid out in the pleadings, was whether Ella Daniel, not the State of Mississippi or DeSoto County, should reimburse Alexander for the $3,162.50 he paid at the tax sale.

¶22.    Other than an equitable argument, Alexander cites in his brief only one case as a basis to persuade us to afford him relief by way of reimbursement for monies expended and fees incurred. In ***Herbrandson v. Thompson***, 808 So.2d 975 (Miss. Ct. App. 2001), the Court of

Appeals was confronted with the issue of whether the trial court appropriately allowed evidence to support damages not specifically set out in the pleadings in a suit for breach of contract on an agreement between two parties for one of the parties to take possession of two mares until each mare's foal was born and weaned. The Court of Appeals found no error in the trial judge's allowing evidence to prove damages incurred after the complaint was filed. Alexander uses this case as a springboard to then assert that "the ruling that [Alexander] should eat the cost associated with confirming title is inequitable and results in a windfall to the State of Mississippi."

¶23. While Alexander understandably would like for Ella, DeSoto County, and/or the State of Mississippi to reimburse him for all monies expended since he is no longer the owner of Parcel 15, the chancellor quite appropriately denied him relief.[14] We find Alexander's reliance on **Herbrandson** to be misplaced. The Court of Appeals in **Herbrandson** simply held that the trial judge did not err in allowing proof of damages incurred after the filing of the complaint and thus not specifically pled. This is altogether different than today's case where Alexander,

---

[14]Alexander correctly observes that the chancellor may have in one instance issued an inconsistent ruling. On the one hand, the chancellor ruled that Ella had tax exempt status and that it was thus error for Parcel 15 to have incurred taxes, while on the other hand, the chancellor also ruled that Ella should reimburse Alexander $1,000 ($500 for 2001 and $500 for 2002) based on the taxes he paid on Parcel 15. Thus, according to Alexander, while the chancellor was in the process of attempting to invoke equity by having Ella reimburse Alexander for taxes he had paid, the chancellor should have gone further and "apportion[ed] the damage against the State of Mississippi, who was joined in the litigation. While the chancellor's ruling certainly appears to be inconsistent, it does not justify a further award from DeSoto County or the State of Mississippi. Likewise, since Ella has not cross-appealed, or otherwise attempted to have us review the chancellor's entry of a judgment of $1,000 against her and in favor of Alexander, we see no reason to address the issue of the propriety of the chancellor's action. Stated differently, we do not believe that the chancellor's possible error, which has thus far not drawn Ella's ire via cross-appeal, is such a denial of a litigant's [Ella's] fundamental right so as to address it under our plain error doctrine. *See* **Wilson v. General Motors Acceptance Corp.**, 883 So.2d 56, 74 (Miss. 2004).

without any citation of authority, is asking us to find that DeSoto County and/or the State of Mississippi should reimburse him for his damages.

¶24. In its prayer for relief contained in its answer to Ella Daniel's amended complaint to set aside the tax deed, the State asserted, inter alia:

> [S]ince the State of Mississippi merely sold the above-described property to Effort Alexander, pursuant to Sections 29-1-1 *et seq*. of the Mississippi Code of 1972, as amended, and said property was certified to it by the DeSoto County Chancery Clerk, the State of Mississippi asserts that its appearance at a hearing on the Amended Complaint to Set Aside Order and Cancel Deed is not necessary, that the State of Mississippi consents to a hearing on the Plaintiff's prayer for relief at any time and requests that a copy of the final Order be forwarded to it.

Evidently, the Attorney General, like the chancellor, saw no such demand from Alexander. A review of the pleadings reveals that certainly Alexander wanted to recoup whatever monies he could, but he made that demand of Ella, not the State.

¶25. This having been said, we acknowledge that which even Alexander does not acknowledge – the existence of Miss. Code Ann. § 29-1-87 (Rev. 2000), which states in pertinent part:

> If the State of Mississippi, through the auditor or land commissioner's office, has heretofore issued or shall hereafter issue a patent or patents for any lands to which the state holds no title, or which did not belong to it at the time of the issuance of such patent or patents......the land commissioner shall investigate the case and report to the attorney general, who, if he shall find the lands so patented did not belong to the state, shall so report to the land commissioner. If the land commissioner shall find that ......the patentee did not acquire any land or title under such patent, he shall mark such patent or patents..... "cancelled," and take them or a duly certified copy to the auditor of public accounts, who shall file the same as a voucher in his office and shall issue his warrant in favor of the patentee or his or her assignees, heirs, or representatives for the amount paid to and retained by the state for such cancelled patent or patents.

17

¶26. As an aside, we acknowledge the obvious – that the office of state land commissioner has been abolished. Miss. Code Ann. § 7-11-4 (Rev. 2002) states in pertinent part that "[t]he words 'state land commissioner,' `land commissioner,' `state land office' and `land office' shall mean the secretary of state wherever the appear in sections......29-1-87."[15] We readily acknowledge that Section 29-1-87 may have afforded Alexander relief, had he chosen in his pleadings and at trial to avail himself of this statute as against the State of Mississippi. However, when considering this statute, we are again faced with the reality that Alexander never put the State of Mississippi on notice that if the chancellor divested him of title to the property, he, as a patentee, was seeking a warrant in the amount of the monies he paid for the property at the time that he received the forfeited tax land patent from the State. His pleadings are silent as to this issue as clearly evidenced by the chancellor's ruling. We have been consistent in holding that we need not consider matters raised for the first time on appeal, which practice would have the practical effect of depriving the trial court of the opportunity to first rule on the issue, so that we can then review such trial court ruling under the appropriate standard of review. *See, e.g., Triplett v. Mayor & Aldermen of Vicksburg*, 758 So.2d 399, 401 (Miss. 2000) (citing *Shaw v. Shaw*, 603 So.2d 287, 292 (Miss. 1992)).

¶27. For these reasons, we find no merit in this assignment of error.

---

[15]In Miss. Code Ann. § 7-11-4, there are in excess of fifty code sections set out, concluding with "or in any other place where they appear in the laws of this state."

¶28.   We acknowledge that Alexander has filed a pro se supplemental brief, and after careful consideration of his pro se supplemental brief, we find that the additional issues raised are without merit and that no discussion is needed here on these issues.

**CONCLUSION**

¶29.   Having meticulously considered the record before us and the applicable law, we reach the inescapable conclusion that the chancellor very ably performed his duties based on conflicting and less-than-clear facts to in due course find that Ella Daniel had been wrongfully divested of her homestead property.   Thus, the chancellor quite appropriately cancelled the forfeited tax land patent previously issued by the State to Alexander and vested Ella Daniel with title to her homestead property.   Accordingly, we affirm the final judgment of the Chancery Court of DeSoto County, Mississippi.

¶30.   **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR.   DIAZ, J., NOT PARTICIPATING**.